OHIO ACADEMY OF NURSING HOMES, INC., Appellee,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellants.

[Cite as *Ohio Academy of Nursing Homes, Inc. v. Ohio Dept. of Job & Family Serv.*, 149 Ohio App.3d 413, 2002-Ohio-4721.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–933.

Decided Sept. 10, 2002.

Geoffrey E. Webster and J. Randall Richards, for appellee.

Betty D. Montgomery, Attorney General, and Alan P. Schwepe, Assistant Attorney General, for appellants.

---

BROWN, Judge.

{¶ 1} Defendants-appellants, the Ohio Department of Job and Family Services ("ODJFS") and Gregory L. Moody, Director of ODJFS, appeal from the

judgment of the Franklin County Court of Common Pleas. The trial court granted summary judgment in favor of the Ohio Academy of Nursing Homes, Inc., plaintiff-appellee.

{¶ 2} On June 25, 1999, appellee filed a class action complaint for declaratory and injunctive relief against (1) ODJFS[1]; (2) Jacqueline Romer–Sensky, individually and as Director of ODJFS[2]; (3) Wayne Sholes, individually and as Senior Deputy Director of ODJFS; and (4) Cheri Walter, individually and as Senior Deputy Director of ODJFS. Appellee alleged in its complaint that it was an Ohio nonprofit corporation and a statewide trade association for nursing facilities and intermediate care facilities for the mentally retarded. Appellee brought the action on behalf of the more than 125 association members who were licensed in the state of Ohio as nursing homes and certified to participate in the Medicaid Program. ODJFS was designated as the single state agency charged with administering the Medicaid Program in the state of Ohio.

{¶ 3} Appellee alleged in the complaint that appellants failed to administer the Medicaid Program in the state of Ohio in conformity with federal and state law. Appellee stated that ODJFS issued a letter on November 1, 1998, notifying association members that they had been overpaid Medicaid funds and that they needed to repay the overpayment amounts to ODJFS. The alleged overpayments were discovered after the United States Department of Health and Human Services ("USDHHS") audited ODJFS. Appellee argued that USDHHS recouped its overpayment from ODJFS and appellants were "illegally attempting to reopen hundreds of closed audit periods going back more than ten (10) years in order to affect a recoupment of funds." Appellee requested a temporary, preliminary, and permanent mandatory injunctive order requiring appellants to "rescind any and all demands to class members for payment for any Medicaid audit period which has been finally settled and which is the subject of a demand for payment of additional funds."

{¶ 4} On July 28, 1999, appellants filed a motion to dismiss or, in the alternative, a motion for summary judgment. Appellants argued that appellee's declaratory judgment action should be dismissed because no real controversy currently existed between the parties. In addition, appellants argued that appellee's cause of action against Romer–Sensky, Sholes, and Walter in their individual capacities should also be dismissed. On June 7, 2000, the trial court sustained appellants' motion for summary judgment, finding that since no formal

---

1. The complaint was originally filed against the Ohio Department of Human Services, now known as the Ohio Department of Job and Family Services.

2. Defendant-appellant, Gregory L. Moody, later replaced Jacqueline Romer–Sensky as Director of ODJFS.

attempt had been made to recover any repayments, no real controversy existed between the parties that is justiciable in nature.

{¶ 5} On August 23, 2000, appellee filed a cross-motion for summary judgment regarding the remaining claims against appellants. Appellants also filed another motion for summary judgment. On May 29, 2001, the trial court rendered a decision concerning the parties' motions for summary judgment, granting in part and denying in part both motions. The court stated:

{¶ 6} "In the case at hand, the Court finds that Defendants were aware of the overpayments at least as far back as 1994, when the [Health Care Financing Administration] issued its audit report. However, Defendants continued to make cost settlements and issue final adjudication orders, with the facilities in question, without due consideration of those overpayments. As a result, Defendants are barred from now trying to re-open these closed reimbursement periods.

{¶ 7} "In addition, although Defendants correctly note that a closed period may be re-opened due to fraud, the Court finds that no fraud has occurred or even been alleged in this case.

{¶ 8} "* * *

{¶ 9} "The Court also finds that when Defendants spend months, and sometimes years, reviewing a facility's records, receiving input from the facility, accountants, and other professionals, and then ultimately calculating the facility's Medicaid inpatient days and final per diem rate, the facility has a right to rely on that final rate.

{¶ 10} "In summary, the Court finds that once a Medicaid audit period is settled and closed, whether by agreement and waiver or final judgment, Defendants are barred by state law and *res judicata* from re-opening and adjusting that period, regardless of whether the period was under the retrospective or prospective reimbursement system."

{¶ 11} On July 19, 2001, the trial court filed a final judgment entry incorporating the prior decisions. The court declared that (1) appellants were barred by state law and res judicata from reopening and adjusting audit periods for a class member after it was settled and closed; and (2) appellants were required to adjudicate all issues for an audit settlement period in one adjudication and appellants have the right and authority to attempt to collect for any audit settlement period which was not closed. The court enjoined appellants, their agents, servants, employees, and those in active concert from (1) collecting or attempting to collect any sums claimed due for Medicaid services rendered by a class member during an audit settlement period which had been closed; (2) collecting or attempting to collect from any class member for any audit period not closed or otherwise settled without first issuing to class members a notice to an

administrative hearing; and (3) return to all class members any amounts collected, recouped, or otherwise received from a class member which relates to a closed and/or settled audit period. Appellants[3] appeal this decision and present the following three assignments of error:

{¶ 12} "[I.] The Lower Court Erred As a Matter of Law by Holding That the Current Reimbursement System Requires the Ohio Department of Job and Family Service to Conduct a 'Final Fiscal Audit' under R.C. 5111.06(B).

{¶ 13} "[II.] The Lower Court Erred As a Matter of Law By Holding That the Ohio Department of Job and Family Service is Required to Adjudicate All Issues at Once in a Final Fiscal Audit Under R.C. 5111.06(B).

{¶ 14} "[III.] The Lower Court Erred As a Matter of Law When It Ordered the Ohio Department of Job and Family Services To Return Voluntary Repayments if the Reimbursement Period is Adjudicated."

{¶ 15} Appellants argue in their first assignment of error that the trial court erred when it held that the current reimbursement system requires appellants to conduct a final fiscal audit pursuant to R.C. 5111.06(B). Appellants contend that the court "grafted the requirement of a 'final fiscal audit' onto the current prospective reimbursement system."

{¶ 16} The Medicaid program is a source of federal funding designed to supplement state reimbursement to providers of medical and long-term care services to the poor. *Morning View Care Center–Fulton v. Ohio Dept. of Human Serv.,* 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, following *Wilder v. Virginia Hosp. Assn.* (1990), 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455. ODJFS "shall pay, as provided in sections 5111.20 to 5111.32 of the Revised Code, the reasonable costs of services provided to an eligible medicaid recipient by an eligible nursing facility or intermediate care facility for the mentally retarded." R.C. 5111.21(A).

{¶ 17} R.C. 5111.23(A) states:

{¶ 18} "[ODJFS] shall pay each eligible nursing facility and intermediate care facility for the mentally retarded a per resident per day rate for direct care costs established prospectively for each facility. The department shall establish each facility's rate for direct care costs quarterly."

{¶ 19} Each facility's rate for direct care costs "shall be based on the facility's cost per case-mix unit" subject to the maximum costs per case-mix established under R.C. 5111.23(B)(2). R.C. 5111.23(B). The criteria to be used by ODJFS in determining the direct care costs per-day rate is outlined in R.C. 5111.23. The

---

3. ODJFS and Moody were the only parties to file a notice of appeal.

criteria to be used by ODJFS in determining the case-mix scores for each facility is outlined in R.C. 5111.231. Other costs affecting the per-day rate are outlined in R.C. Chapter 5111.

{¶ 20} R.C. 5111.06(B) states:

{¶ 21} "Except as provided in division (D) of this section, the department shall do either of the following by issuing an order pursuant to an adjudication conducted in accordance with Chapter 119. of the Revised Code:

{¶ 22} "(1) Enter into or refuse to enter into a provider agreement with a provider, or suspend, terminate, renew, or refuse to renew an existing provider agreement with a provider;

{¶ 23} "(2) Take any action based upon a final fiscal audit of a provider."

{¶ 24} An "adjudication" is a "determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person." R.C. 119.01(D). R.C. 5111.06(C) and 119.12 allow a party adversely affected by the issuance of an adjudication order by ODJFS to appeal the order to the Franklin County Court of Common Pleas.

{¶ 25} Given the language of R.C. 5111.06(B) allowing ODJFS to (1) enter into a provider agreement with a provider; (2) refuse to enter into a provider agreement with a provider; (3) suspend, terminate, renew, or refuse to renew an existing provider agreement with a provider; or (4) take any action based upon a final fiscal audit of a provider, it is apparent that some finality must be reached in order for the provider to have a non-administrative remedy if the provider disagrees with the actions of ODJFS. As stated by the trial court, in order for a hearing pursuant to R.C. 5111.06 and 119.06 to be held, "there must have first been a final fiscal audit, which impliedly means that all issues for the reimbursement period have been adjudicated, and there also must have been a proposed adjudication order pursuant to the final fiscal audit. Otherwise, there would be nothing for the facilities to contest." R.C. 5111.06 plainly states what ODJFS is required to do in order to issue an order pursuant to adjudication. Therefore, the trial court did not err when it held that ODJFS must follow R.C. 5111.06. Accordingly, appellants' first assignment of error is overruled.

{¶ 26} Appellants argue in their second assignment of error that ODJFS is not required to adjudicate all issues at once in a final fiscal audit pursuant to R.C. 5111.06(B). Appellants claim that R.C. 5111.06(B)(2) allows ODJFS either to reserve or not include matters that affect a final fiscal audit of a provider "so long as the reserved issues are resolved pursuant to an adjudication under Chapter 119 of the Revised Code at some future point of time." The trial court enjoined appellants, "their agents, servants, employees and those in active concert with [appellants] to take all actions relating to a final fiscal audit in one

adjudicatory process and, upon failing to do so, be, and hereby is, barred from separating issues from one adjudicatory process, including alleged overpayments based on patient days." The court also declared that appellants "are required to adjudicate all issues for an audit settlement period in one adjudication."

{¶ 27} By allowing issues to be resolved "at some future point of time," ODJFS would not be complying with R.C. 5111.06(B)(2)'s requirement for a "final fiscal audit." The reasoning behind R.C. 5111.06(B)(2)'s requirement for finality was given by appellee in its motion for summary judgment. Appellee stated that once a period has been closed, ODJFS should not be allowed to reopen the closed period because many "providers purge records of closed periods after retention requirements are met and, therefore, lack documentation to contest new claims attributed to those closed periods."

{¶ 28} Additionally, the "Ohio Supreme Court has determined that a licensed Medicaid provider has a legitimate property interest in the reimbursement rate provided for it under R.C. 5111.21 and 5111.22, and that its interest may 'not be diminished absent due process of law.'" *Morning View Care Center–Fulton*, supra, at ¶ 33.

{¶ 29} As stated by the trial court:

{¶ 30} "If the audit periods have not been settled and closed, then [appellants] are free to propose adjustments to those periods.

{¶ 31} "* * *

{¶ 32} "[W]hen [appellants] spend months, and sometimes years, reviewing a facility's records, receiving input from the facility, accountants, and other professionals, and then ultimately calculating the facility's Medicaid inpatient days and final per diem rate, the facility has a right to rely on that final rate."

{¶ 33} In the present case, ODJFS attempted to collect monies from providers without an adjudication order as required by R.C. 5111.06 after readjusting the reimbursement rate for closed periods. Unless a prior agreement has been reached with the providers reserving certain claims or rights for future determination, ODJFS cannot reopen a reimbursement period after it has been closed, and appellants cannot unilaterally change the rate for closed periods absent evidence of fraud. Without some finality for the reimbursement period from either an agreement or a final fiscal audit, providers would not be able to rely upon the per-resident per-day rate for direct care costs determined by appellants or appeal that rate pursuant to R.C. Chapter 119. Accordingly, appellants' second assignment of error is overruled.

{¶ 34} Appellants argue in their third assignment of error that the trial court erred when it ordered ODJFS to return voluntary repayments if the

reimbursement period had been adjudicated. Appellants claim that this decision is inconsistent with the prior decision of the trial court where it denied appellee's request to refund any class member any sums previously collected because appellants "have accepted only voluntary payments for any alleged overpayments to the facilities."

{¶ 35} A review of the trial court's May 29, 2001 decision and its July 19, 2001 final judgment entry would appear to indicate that they are inconsistent regarding whether ODJFS should be required to reimburse any sums previously collected. In its May 29, 2001 decision, the trial court denied appellee's request that appellants refund any class member any sums previously collected. The basis of this decision was that ODJFS "accepted only voluntary payments for any alleged overpayments to the facilities" and, therefore, the voluntary nature of these actions precludes a finding by the trial court that a constitutional or statutory violation has occurred. The July 19, 2001 entry enjoins appellants "to return to all class members any amounts collected, recouped or otherwise received from a class member which relates to a 'closed' and/or 'settled' audit period * * *." This entry indicates that appellants must return the funds collected, since they were not collected in accordance with the statutory requirements in R.C. 119.06 and 5111.06.

{¶ 36} An order resolving fewer than all the claims or the rights and liabilities of fewer than all the parties must satisfy the requirements of Civ.R. 54(B) by containing express determination that "there is no just reason for delay" to qualify as a final appealable order. *Daroczy v. Lantz* (Nov. 16, 2000), Franklin App. No. 00AP–16, 2000 WL 1715778. In the present case, the May 29, 2001 decision was not a final appealable order because it did not resolve all claims and did not satisfy the requirements of Civ.R. 54(B). "If the order is not a final appealable order, the order is an interlocutory order and is subject to modification by the trial court." Id., following *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 96, 540 N.E.2d 1381. Therefore, the trial court was free to modify its May 29, 2001 decision. The July 19, 2001 final judgment entry is the court's final appealable order.

{¶ 37} Appellant claims that summary judgment was improper because questions of fact remain. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201; *Bishop v. Waterbeds 'N' Stuff*, Franklin App. No. 01AP–1105, 2002-Ohio-2422, 2002 WL 1013065, at ¶ 7.

{¶ 38} A review of the record fails to show any genuine issues of material fact concerning whether the payments made by providers after periods have been closed should be returned by appellants. The record shows that appellants never intended to allow the providers to have the option to "voluntarily" make payments for the closed periods. A letter from ODJFS to an accounting firm dated January 31, 1997, authorized the firm to "pursue the identification and recovery of claims paid to providers." The firm was to be paid 8.75% of all revenues recovered from the providers. In a memorandum dated August 1998, it was stated that providers would be notified about the alleged Medicaid overpayment and then given an opportunity to repay the overpayment amount. The memorandum further stated: "For those providers who refuse to repay or do not repay within the time allowed, we will certify the claim to the Attorney General's office for collection."

{¶ 39} After having reviewed the record, we find that the record supports the trial court's granting of summary judgment in favor of appellee in paragraph eight enjoining "Defendants, their agents, servants, employees and those in active concert with Defendants to return to all class members any amounts collected, recouped or otherwise received from a class member which related to a 'closed' and/or settled audit period." As stated previously, appellants cannot unilaterally change the rate for closed periods absent evidence of fraud. Appellants' third assignment of error is overruled.

{¶ 40} Accordingly, appellants' three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

DESHLER, J., concurs.

BOWMAN, J., concurs separately.

BOWMAN, Judge, concurring separately.

{¶ 41} While I concur with the majority that the judgment of the trial court should be affirmed, I write separately to explain my reasons.

{¶ 42} With regard to the first assignment of error, I agree with the trial court's conclusion that, once a case is concluded by virtue of settlement, waiver, or adjudication, res judicata precludes further action and prohibits ODJFS from collecting additional funds from providers. Although I do not believe that adjudication always requires a final fiscal audit, I also do not believe that the trial court's final judgment imposes that requirement, as the court's judgment expressly takes into consideration the different methodology used to obtain finality under the current prospective system. I would overrule appellants' first assignment of error on that basis.

{¶ 43} As to their second assignment of error, I note that appellants have cited no authority that would support their argument that ODJFS is entitled to avoid finality by unilaterally reserving some issues for future adjudication. In support of this assignment of error, appellants rely exclusively upon *"The Washington D," The Washington Nursing Home v. Ohio State Dept. of Human Serv.* (June 14, 2001), Franklin App. No. 00AP–939, 2001 WL 664401. *Washington D* is inapposite, however, as that case involved the *voluntary waiver* by a nursing home provider of its right to adjudicate some, but not all, issues pertaining to an audit period. The instant judgment, by contrast, does not undermine a provider's right to waive adjudication on some issues. Indeed, the trial court acknowledged that finality can be the result of adjudication, settlement, or waiver. I would therefore overrule appellants' second assignment of error.

{¶ 44} With regard to appellants' third assignment of error, I do not believe that the alleged conflict between the trial court's May 29, 2001 decision and its July 19, 2001 judgment entry raises an issue of fact that would preclude resolution by summary judgment. Because I agree, as a matter of law, with the trial court's conclusion that appellants are not entitled to retain amounts collected which relate to a closed or settled audit period, I would overrule appellants' third assignment of error.