ALBAN, APPELLANT, *v.* OHIO REAL ESTATE COMMISSION ET AL., APPELLEES.

(No. 80AP-917—Decided June 23, 1981.)

*Mr. Christopher T. Cline,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Michael Squillace,* for appellees.

STRAUSBAUGH, P.J. This is an appeal by appellant, Larry E. Alban, from a judgment of the common pleas court finding that the order of the Ohio Real Estate Commission is supported by reliable, probative and substantial evidence and is in accordance with law and therefore affirming said order.

The record indicates that in the latter half of 1979 Jeffrey and Tonya Carroll wished to sell their house because they planned to move to Indiana for business reasons. They had been to other realtors before contacting appellant, Larry E. Alban. On September 19, 1979, they telephoned Larry Alban Realty Company and talked with a salesperson, Brenda Large, who came to look at the home, along with appellant's office manager, Robert Fowler. The Carrolls wanted to sell quickly and not list it with a realtor but rather as a direct sale in the form of a "buy out." The Carrolls had already written to the Veterans Administration where they had the loan and ordered a loan assumption package. Following the call to appellant, Brenda Large and Robert Fowler visited the Carroll home. After inspecting the home and following discussion, appellant's employees indicated that Alban would probably be interested in purchasing the home and would probably pay between $6,200 to $6,500 for the Carrolls' equity in the home depending upon

the loan balance owed by the Carrolls, which would not be known until the closing package was received from the Veterans Administration.

A few days later Brenda Large brought Larry Alban to the house and they both looked at it. Appellant stated that he would like to buy the house but he would have to check with his banker first. He told the Carrolls that if he got the loan the Carrolls should not make any payments on the loan because it would "mess up the loan assumption." Mr. Carroll testified that appellant and Brenda Large said that "we couldn't sign a contract because we didn't have the exact figures, and I just took it at that." He further stated that a few days later Brenda Large called and said that Alban had talked to his banker and had obtained the loan and was going to buy the house and that, as soon as the information on the exact figures came from the Veterans Administration, "to call them and let them know and they would take it from there." It was further agreed that the Carrolls would leave a wood stove in the house, leave track lighting in the basement and reinstall two kitchen cupboards.

Meanwhile, Mr. Carroll's Indiana job offer did not materialize, which changed the Carrolls' plans for moving out of the state. Thereupon, the Carrolls called Brenda Large and asked if the appellant was still going to buy the house. When she stated that he was, the Carrolls entered into a one-year lease for an apartment and moved from the house into said apartment. Thereafter, Brenda Large called Mrs. Carroll and stated that Larry Alban would like to come over and look at the house again. Whereupon, Mrs. Carroll asked if Alban still wanted to buy the house. Brenda Large said that he still wanted to buy the house. Mrs. Carroll said to have him call and make an appointment to look at the house. Mr. Carroll stated that they never heard from him even though they have an answering service on the telephone.

Mr. Carroll testified that approximately a week later Brenda Large called and stated that Larry Alban did not want to buy the house any more. Mr. Carroll stated that he and his wife then contacted the State Board of Realtors, following which the Carrolls talked to Mr. Alban on a Friday evening:

"* * * He told us that he didn't want to be intimidated, that he was going to buy the house, that he was going to give us $6,500 for it, but the points had gone up, and this, and prices, and he decided he wasn't going to buy it.

"* * * It was kind of strained relations there at first, and then after we talked it kind of got down to where we were on more compatible speaking terms, and he says, I'll tell you what, I'll come out and look at the house again on Saturday. So, Saturday he came out. We had a few people at the house at the time. He came out with Bob Fowler and looked at the house again, and told Tonya that he was going to talk to his banker again. She said okay.

"Monday, sometime during the day, he called my wife at work and said that he had spoken to Art Colson at the State Board of Realtors and he explained the situation to him and that Art Colson said that we didn't have a case, and that's what he told us. Then he says, I'm not buying the house.

"So, at that time, we came to the State Board of Realtors and filed a complaint."

Following the call from Brenda Large stating that Alban was not going to buy the house, Mr. Carroll stated he called the Veterans Administration the next morning and after much effort obtained the exact loan balance figure by telephone. Mr. Carroll stated that Brenda Large had stated that Mr. Alban was going to buy the house for $6,500 over the loan assumption. Mr. Carroll further stated that, although appellant had never stated this before, appellant stated that he was not going to buy the house, that he "had

agreed to go the loan assumption for $6,500," and that he knew exactly what the loan balance was but wanted out of the agreement because of points and prices going up.

Mrs. Carroll testified that they talked about writing a contract, but that Mr. Alban stated he wanted to wait and talk to his banker "and then we agreed to go ahead and wait on the figures." She further testified that it was her interpretation that the Carrolls would get $6,500 and Mr. Alban was going to assume the loan. She stated that after the four of them discussed it, they agreed not to put the contract in writing until the package containing the final payoff figure came.

Brenda Large testified that she told the Carrolls that Larry made an offer of $6,500 but that she at no time said that Larry was definitely buying the house and that she did not tell them to absolutely stop making house payments. She agreed with the testimony of the Carrolls as to the repairs which Mr. Alban wanted made. She stated that Mr. Alban had instructed her to offer the Carrolls $6,500 free and clear, and to inform them that he would assume the mortgage and for her to make the offer to the Carrolls orally, which she did.

At the hearing, appellant Alban stated that he did not wish to be sworn in and did not wish to testify.

In his closing statement at the conclusion of the hearing, Mr. Alban admitted, through Brenda Large, that he orally offered to purchase the Carroll property with certain stipulations, but that he did not have a written offer when Brenda Large made the offer to the Carrolls. Mr. Alban also stated that it is usually standard procedure when an offer is made on a piece of real property to have that offer in writing.

In its decision, the common pleas court found in part:

"First, was there an oral contract between the appellant and complainants for purchase of real property of complainants by appellant? There is ample evidence from which appellee could reach the conclusion that a contract between competent parties had been concluded and that discrepancies as to closet doors, one dirty wall and formal production of Veterans Administration documents, the contents of which were known to appellant and complainants when the bargain was struck, were all matters not material to the contract.

"Secondly, it is urged that a contract for the conveyance of an interest in real property is required by Section 1335.05 ORC. To this, the parties and the Court agree. The Court further finds, from ample case authority, that an oral contract is either voidable or unenforceable at the option of the party sought to be charged in a legal action.

"Thirdly, it is the Court's opinion that in Ohio, when a party to an oral contract for the sale of real property has substantially and to his detriment, changed his position in reliance upon the contract, the contract is removed from the operation of the statute of frauds.

"On this latter proposition, there is a conflict of evidence as shown by the testimony of the two complainants. At page 32 of the transcript Jeff Carroll states that complainants left their home because they believed appellant had purchased it. At pages 52-53 of the transcript, Tonya Carroll said the same but on page 38 of the transcript, we find Jeff Carroll saying they didn't return to their home after a second change of plans kept them in Columbus and after being advised appellant was not going to buy their property, because his work didn't leave him with time to care for a residential property.

"However, the evidence on the point is reliable, probative and substantial and appellee chose to believe complainants' move from their home as a change made in reliance on the contract with appellant, as appellee has every right in law to do.

"The Court finds appellee's decision supported by reliable, probative and substantial evidence and in accordance with law. * * *"

The appellant makes the following five assignments of error:

"The Court of Common Pleas erred in failing to decide the appeal below in appellant's favor on the basis of procedural defects, said defects being:

"(A) A complete record was not filed in the Common Pleas Court as required by Ohio Revised Code 119.12 specifically, the Complaint filed against Appellant was omitted.

"(B) Appellant was never notified of the filing of a Complaint against him in the Ohio Real Estate Commission as required by Ohio Revised Code 4735.051 (A).

"(C) Appellant was never notified of the formal hearing scheduled on December 4, 1979 or of the nature of the charge upon which the hearing was based, or the scope of the hearing, as required by Ohio Revised Code 119.07.

"(D) Although a hearing before a referee employed by the Ohio Real Estate Commission was held on December 4, 1979, and findings of fact and conclusions of law were made and filed by that referee on January 4, 1980, the Ohio Real Estate Commission never acknowledged receipt of the referee's recommendations or approved, disapproved, or modified them as required by Ohio Revised Code 119.09.

"(E) Although the appellant filed objections to the referee's recommendations on January 18, 1980, the Ohio Real Estate Commission never received said objections or considered them in making its final order, as required by Ohio Revised Code 119.09.

"(F) The final order of the Ohio Real Estate Commission is defective in that the referee's findings of fact and conclusions of law that appellant was guilty of negligent conduct did not support the ultimate finding of the Ohio Real Estate Commission that appellant had engaged in '*gross* negligence' as the term is used to describe prohibited conduct in Ohio Revised Code 4735.18(F).

"2. It was error to determine, from the evidence presented below, that an oral contract for sale of real estate had been made by appellant, the elements of contract formation being lacking, and that such oral agreement was binding on appellant.

"3. The Ohio Statute of Frauds requires contracts for the sale of real estate to be in writing, and it was error for the Court below to rule that the evidence given herein supported a removal of the instant facts from the Statute of Frauds on the basis of part performance.

"4. It was error below not to find that appellant had properly withdrawn from negotiations to purchase the real estate at a proper and appropriate time, which withdrawal terminate[d] any obligation on his part.

"5. It was error to determine that Appellant's alleged act of failing to perform an oral contract for the sale of real estate constituted 'gross negligence' and 'incompetency' as said terms are used in 4735.18 (F), Ohio Revised Code."

With respect to the first assignment of error, this court held in *Checker Realty Co.* v. *Ohio Real Estate Comm.* (1974), 41 Ohio App. 2d 37 [70 O.O.2d 46], that the mere omission of an item from the certified record of the proceedings of an administrative agency upon the appeal of one of its decisions does not require a reversal of the order pursuant to R.C. 119.12, where that which has been omitted in no way prejudices the appellant in the presentation of his appeal. Here we find no prejudice to the appellant by the omission of the complaint in this case inasmuch as R.C. 4735.18 has been amended to provide that the Superintendent of the Real Estate Commission may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee. Furthermore, R.C. 4735.051

provides in part that the investigation and audit section of the Division of Real Estate shall investigate the conduct of any licensee against whom a written complaint is filed. Therefore, where, as in the instant case, an unverified written complaint was filed, an investigation may be instigated on the basis of either that complaint or upon the motion of the superintendent. A verified complaint is not mandatory. Furthermore, appellant has failed to show how he has been prejudiced by the omission of the complaint from the record. Appellant *could* have requested the production of the complaint at the hearing which he did not do. Furthermore, we find no objection in the record by the appellant below and, therefore, he has waived his right to argue this issue for the first time on appeal.

We find that all of the requirements of R.C. 119.07 were complied with inasmuch as appellant stipulated that he had received notice of the hearing and the charges against him, and the formal notice was admitted as joint Exhibit No. 2. By his waiver, appellant cannot now complain that he was unprepared for the hearing or that, even had he had an attorney, he would have not been able to adequately prepare a defense. At the conclusion of the hearing, appellant stated, upon inquiry by the hearing officer, that he was aware that he had a right to be represented by an attorney but that he voluntarily chose to represent himself.

In this case, appellant has failed to show that the findings of the Ohio Real Estate Commission were not based upon the report and recommendation of the hearing examiner. The order is consistent with the recommendations of the hearing examiner, and, therefore, it must be presumed that the commission relied upon the report and recommendation of the hearing examiner. In the present case, the hearing examiner found that the appellant had violated the provisions of R.C. 4735.18(F) and recommended that appellant's license be suspended for thirty days. The commission made the same finding and order. We find that the commission followed proper procedures in this case pursuant to R.C. Chapters 4735 and 119. Even if there was some technical defect, there is no showing that there was prejudice to the appellant.

For the sake of convenience, the remaining four assignments of error will be considered together.

R.C. 4735.18 provides in part:

"The superintendent of real estate may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee. The Ohio real estate commission shall suspend or revoke the license of any licensee who, in his capacity as a real estate broker or salesman, or limited real estate broker or salesman, or in handling his own property, is found guilty of:

"* * *

"(F) Dishonest or illegal dealing, gross negligence, incompetency, or misconduct, including, without in any way limiting the foregoing, a conviction of a felony or a crime involving moral turpitude."

The trial court in this case found that the appellant had caused the Carrolls to substantially, and to their detriment, change their position in reliance upon the contract and that the contract, therefore, was removed from the operation of the statute of frauds. Although appellant vigorously argues that this case rises and falls upon the issue of whether there was an enforceable contract for the purchase of real estate for the reason that said contract was not reduced to writing, we find that this is not the issue of the case. This case is not an action for money damages, nor a cause for equitable relief. The issue here is whether the administrative agency had reliable, probative and substantial evidence to suspend appellant's real estate license. The fact that the contract in question may not be enforceable in a court of law does not relieve appellant from the rules laid down by R.C. 4735.18. A person holding a real estate license is held to a higher standard of competency

and fairness than is a lay member of the public in the market place. The license granted by the state to individuals acting as real estate brokers imposes a duty to conform to the statutory standards set forth in R.C. Chapter 4735. Appellant's gross negligence or incompetence, or both, is depicted by his submitting an oral contract to purchase when, by his own unsworn admission, he knew that such oral offer was not in compliance with legal requirements, and contrary to good real estate practice.

We find that the trial court was correct in finding that there was evidence to support the finding of the commission and the hearing officer that there was a binding oral contract in this case based upon part performance of the Carrolls and their detrimental reliance upon the promise of appellant Alban. However, even if this not be true, we find that there is sufficient evidence that appellant had violated R.C. 4735.18(F) through his incompetence and/or gross negligence in this transaction. It is clear that in this case appellant acted for his own self-interest by his failure to perform on the contract because of the rise in interest rates. There is evidence here that appellant ignored his fiduciary duty to deal with the Carrolls with the fairness, fidelity and good faith that his licensure as a real estate broker requires. We, therefore, overrule all five of appellant's assignments of error and affirm the judgment of the common pleas court.

*Judgment affirmed.*

WHITESIDE and MOYER, JJ., concur.