AMCARE, INC., d.b.a. Miller Memorial Nursing Center, Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, Appellee.

[Cite as *AmCare, Inc. v. Ohio Dept. of Job & Family Serv.*, 161 Ohio App.3d 350, 2005-Ohio-2714.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–209.

Decided June 2, 2005.

Buckingham, Doolittle & Burroughs, L.L.P., and Thomas W. Hess, for appellant.

Jim Petro, Attorney General, and Juliane E. Barone, Assistant Attorney General, for appellee.

Geoffrey E. Webster and J. Randall Richards, urging reversal for amicus curiae, Ohio Academy of Nursing Homes, Inc.

---

PETREE, Judge.

{¶ 1} Appellant, AmCare, Inc., d.b.a. Miller Memorial Nursing Center, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Department of Job and Family Services, which determined that appellant must repay a total of $452,312.43 to it as a result of Medicaid provider overpayments. The Ohio Academy of Nursing Homes, Inc., has filed an amicus curiae brief. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} Appellant owned and operated a 200–bed nursing home as a Medicaid provider. Appellant was paid for its participation as a provider based on prospective rates established from cost report information. For purposes of 1994 fiscal year (from July 1, 1993 to June 30, 1994) reimbursement, appellant filed a six-month cost report for each half of the 1992 calendar year. Appellant filed the first six-month cost report for the 1992 calendar year on October 1, 1992, and the second cost report on April 20, 1993. These two cost reports were used to determine the reimbursement per diem rate (the "prospective rate") for the 1994 fiscal year pursuant to 1992 Am.Sub.H.B. No. 904, Section 126,[1] as well as the applicable version of Ohio Adm.Code 5101:3–3–20(A).

{¶ 3} Similarly, for purposes of 1995 fiscal year (from July 1, 1994 to June 30, 1995) reimbursement, appellant filed a six-month cost report for each half of the 1993 calendar year. Appellant filed the first six-month cost report for the 1993 calendar year on February 10, 1994, and the second cost report on May 2, 1994. These two cost reports were used to determine the reimbursement per diem rate (the prospective rate) for the 1995 fiscal year, pursuant to Am.Sub.H.B. No. 904, Section 126, as well as the applicable version of Ohio Adm.Code 5101:3–3–20(B).

{¶ 4} By being a Medicaid provider, appellant agreed that the payments under the agreement were subject to an audit process. Pursuant to R.C. 5111.27(B), appellee conducted audits of the cost reports corresponding to the 1994 and 1995 fiscal years. As a consequence of the audits of the cost reports, appellee ultimately determined that appellant had received Medicaid overpayments for the 1994 and 1995 fiscal years of $87,232.32, and $365,080.11, respectively. The audit findings corresponding to the 1992 calendar year cost reports were issued to

---

1. Am.Sub.H.B. No. 904, Section 126, provided that "[n]otwithstanding section 5111.26 of the Revised Code or any other provision of the Revised Code," the rates for fiscal years 1994 and 1995 shall each be based on *two* six-month cost reports. We note that R.C. 5111.26 provides for the filing of "an *annual* cost report." (Emphasis added.)

appellant on March 29, 1996, and the audit findings corresponding to the 1993 calendar year cost reports were issued to appellant on April 25, 1997. In view of the dates that the cost reports were filed, the record indicates that the audit findings were issued within three years of the filing of the corresponding second six-month cost reports but not within three years of the filing of the corresponding first six-month cost reports.

{¶ 5} Appellant challenged the overpayment determinations in an administrative hearing held in March 2003. In the administrative hearing, appellant asserted that appellee failed to comply with the requirements of R.C. 5111.27(B) as to the issuance of the audit reports. Appellant did not factually dispute the overpayment determinations for the 1994 and 1995 fiscal years. Its contention was that the overpayment determinations were void because appellee failed to timely issue the audit reports, and therefore appellant's demand for repayment was invalid. On June 26, 2003, the hearing examiner submitted his recommendation to appellee. The hearing examiner determined that the reports were timely issued and accordingly recommended that appellee implement the proposed adjudication orders as written.

{¶ 6} On July 21, 2003, appellee issued an adjudication order adopting the hearing examiner's report and recommendation. Appellee accordingly concluded that appellant owed $87,232.32 for fiscal year 1994 and $365,080.11 for fiscal year 1995. Pursuant to R.C. 119.12, appellant appealed from this order to the Franklin County Court of Common Pleas.

{¶ 7} The Franklin County Court of Common Pleas affirmed the order of appellee, finding that the order was supported by probative, substantial, and reliable evidence, and in accordance with law. In making this finding, the trial court determined that the statutory provision relating to the three-year time period for the issuance of audit reports is directory and not mandatory.

{¶ 8} Appellant appeals from this judgment and has asserted the following two assignments of error:

1. The lower court erred when it found that the Ohio Department of Job and Family Services' order of July 21, 2003, was supported by reliable, probative, and substantial evidence and was in accordance with the law.

2. The lower court erred when it found the three-year time period for the Ohio Department of Job and Family Services to issue an audit as described in Ohio Revised Code Section 5111.27(B) was directory and not mandatory.

{¶ 9} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' "

*Lies v. Ohio Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390.

{¶ 10} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. Regarding factual issues, an appellate court's review is limited to determining whether the common pleas court abused its discretion in finding that the agency's decision was supported by reliable, probative, and substantial evidence. *Pons,* supra. An "abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. On questions of law, however, the court reviews de novo. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

{¶ 11} Appellant argues in this appeal that the audits were not timely completed, and therefore the "findings associated with the untimely audits are automatically void." Appellant also argues that the three-year time period for issuing an audit report under R.C. 5111.27(B) is mandatory and not directory. As noted above, the trial court determined that the provisions of R.C. 5111.27(B) relating to the three-year period are directory and not mandatory. According to appellant, the trial court, in affirming the order of appellee, failed to follow this court's decision in *Ohio Academy of Nursing Homes, Inc. v. Ohio Dept. of Job & Family Services* (2002), 149 Ohio App.3d 413, 777 N.E.2d 875. We find nothing in *Ohio Academy of Nursing Homes* relating to whether the time period for issuing an audit report under R.C. 5111.27(B) is mandatory or directory.

{¶ 12} We find that the central issue in this matter is whether R.C. 5111.27(B) placed a mandatory duty upon appellee to issue audit reports within three years after the first six-month cost reports were filed, thereby voiding any determination associated with audit reports not issued within three years of the first six-month cost reports. Our resolution of this issue disposes of this appeal.

{¶ 13} The three-year time period language regarding the issuance of an audit report is found in R.C. 5111.27(B). R.C. 5111.27(B) provides:

The department may conduct an audit, as defined by rule adopted by the director of job and family services in accordance with Chapter 119. of the Revised Code, of any cost report and shall notify the nursing facility or intermediate care facility for the mentally retarded of its findings.

* * * *The department shall issue the audit report no later than three years after the cost report is filed,* or upon the completion of a desk or field audit on the report or a report for a subsequent cost reporting period, whichever is

earlier. During the time within which the department may issue an audit report, the provider may amend the cost report upon discovery of a material error or material additional information. The department shall review the amended cost report for accuracy and notify the provider of its determination.

(Emphasis added.)

{¶ 14} Regarding overpayment determinations, as occurred in this case, R.C. 5111.27(B) must be viewed in conjunction with R.C. 5111.28, which provides:

(B) If the provider properly amends its cost report under section 5111.27 of the Revised Code, *the department makes a finding based on an audit under that section*, or the department makes a finding based on an exception review of resident assessment information conducted under that section after the effective date of the rate for direct care costs that is based on the assessment information, *any of which results in a determination that the provider has received a higher rate than it was entitled to receive, the department shall recalculate the provider's rate using the revised information. The department shall apply the recalculated rate to the periods when the provider received the incorrect rate to determine the amount of the overpayment. The provider shall refund the amount of the overpayment.*

(Emphasis added.)

{¶ 15} Preliminarily, we note that the filing of two cost reports for each applicable calendar year was necessary in this case to determine the corresponding prospective rate. Appellee conducted audits of each of those cost reports, and determined that there was an overpayment for the 1994 and 1995 fiscal years. Thus, in order to determine whether the prospective rate was correct and whether there was an overpayment for a particular period, appellee needed to consider audit findings relating to both cost reports for the particular calendar year.

{¶ 16} The Supreme Court of Ohio has stated that " 'the word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " *Ohio Civ. Rights Comm. v. Countrywide Home Loans, Inc.*, 99 Ohio St.3d 522, 2003-Ohio-4358, 794 N.E.2d 56, ¶ 4, quoting *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. See, also, *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68 (finding that, based on the use of the word "shall" in R.C. 4903.21, upon service or waiver of the notice of appeal as provided in R.C. 4903.13, the Public Utilities Commission has a clear legal duty to transmit a transcript of proceedings in an appeal, even if the Supreme Court of Ohio may lack jurisdiction in the appeal).

{¶ 17} In *Countrywide Home Loans, Inc.,* the Supreme Court of Ohio addressed the issue of "whether R.C. 4112.05(B)(7) is a statute of limitations for the filing of complaints by [the Ohio Civil Rights Commission ('OCRC') ] or whether it is a directory provision to encourage the orderly processing of discrimination claims." Id. at ¶ 3. R.C. 4112.05(B)(7) provides that any complaint issued by OCRC, pursuant to R.C. 4112.05(B)(5), after the complainant filed the charge, pursuant to R.C. 4112.05(B)(1), "shall be so issued within one year after the complainant filed the charge with respect to an alleged unlawful discriminatory practice." The court held that the provision is a mandatory statute of limitations.

{¶ 18} A statutory time provision may be directory, even with "shall" as the operative word. See *In re Davis* (1999), 84 Ohio St.3d 520, 522, 705 N.E.2d 1219. In *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, at paragraphs one, two, and three of the syllabus, the Supreme Court of Ohio held as follows:

1. A statute is mandatory where noncompliance with its provisions will render illegal and void the steps or acts to which it relates or for which it provides, and is directory where noncompliance will not invalidate such steps or acts.

2. As a general rule, statutes which relate to the essence of the act to be performed or to matters of substance are mandatory, and those which do not relate to the essence and compliance with which is merely a matter of convenience rather than substance are directory.

3. As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure; and, unless the object or purpose of a statutory provision requiring some act to be performed within a specified period of time is discernible from the language employed, the statute is directory and not mandatory.

{¶ 19} In *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 142 N.E. 611, the Supreme Court of Ohio stated:

Whether a statute is mandatory or directory is to be ascertained from a consideration of the entire act, its nature, its object, and the consequences which would result from construing it one way or the other.

Where the instructions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, the provisions may generally be regarded as directory.

A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory merely, *unless*

*the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer.* (Citations omitted; emphasis added.) Id. at 255, 142 N.E. 611.

{¶ 20} In this case, R.C. 5111.27(B) provides that if appellee conducts an audit of a cost report, appellee "shall" issue the audit report within three years of the filing of the cost report. In *Countrywide Home Loans, Inc.*, the Supreme Court of Ohio found the general rule of statutory construction as stated in *Dorrian*, supra, to be instructive, even though *Dorrian* "essentially dealt with the question whether there was a mandatory duty to act, and not when the act was to be done." *State ex rel. Webb v. Bryan City School Dist. Bd. of Edn.* (1984), 10 Ohio St.3d 27, 31, 10 OBR 178, 460 N.E.2d 1121. The *Countrywide Home Loans, Inc.* case is distinguishable from the case at bar because that case involved a time limitation on the filing of a complaint, and this case involves the act of issuing an audit report. Furthermore, we observe that the majority in *Countrywide Home Loans, Inc.* did not discuss or overrule *Farrar*; it apparently found *Farrar* inapplicable under the facts of the case.

{¶ 21} We concur with the trial court's finding that the general rule stated in *Farrar* is applicable to this case and that the *Barnell* exception is inapplicable. In this case, appellant essentially argues that R.C. 5111.27(B) precludes appellee's recovery of overpayments on the basis that audit reports were not issued within three years of the filing of the first six-month cost reports. However, notwithstanding the use of the word "shall" regarding the issuance of an audit report, R.C. 5111.27(B) does not express an intent that appellee is precluded from recovering overpayments if an audit report is not issued within three years of a cost report. When viewed in context, it is clear that the three-year time provision in R.C. 5111.27(B), relating to the issuance of audit reports, is a directory provision, and not a statutory limitation on appellee's ability to recover overpayments. In sum, we agree with the trial court's assessment that "it appears the *Barnell* exception or limitation does not apply because of the lack of legislative expression of intention to arrest the power of appellee to, in this case, seek recompense merely because of an untimely release of an audit report" or more specifically, the untimely release of the audit findings corresponding to the first six-month cost reports.

{¶ 22} Considering the foregoing, we conclude that the time restriction contained in R.C. 5111.27(B), regarding the performance of the official duty of issuing an audit report, does not serve as a limitation on the recovery of overpayment by appellee in this case. In other words, we do not view the time restriction for the issuance of an audit report contained in R.C. 5111.27(B) as a limitation on appellee's ability to seek repayment for fiscal years 1994 and 1995.

Therefore, we hold that R.C. 5111.27(B) did not impose a mandatory duty upon appellee to issue audit reports corresponding to the first of two six-month cost reports within three years of appellant's filing of each of those cost reports. The audit findings were valid and could be relied upon in determining overpayment.

{¶ 23} The trial court did not err in finding appellee's July 21, 2003 order to be supported by reliable, probative, and substantial evidence and to be in accordance with law. Based on the foregoing, we overrule appellant's two assignments of error and therefore affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN, P.J., and KLATT, J., concur.