BOGGS, Appellant,

v.

OHIO REAL ESTATE COMMISSION, Appellee.

[Cite as *Boggs v. Ohio Real Estate Comm.,* 186 Ohio App.3d 96, 2009-Ohio-6325.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–230.

Decided Dec. 3, 2009.

Madison & Rosan, L.L.P., Kristin E. Rosan, and Darcy A. Burdette, for appellant.

Richard Cordray, Attorney General, and Cheryl R. Hawkinson and Janyce C. Katz, Assistant Attorneys General, for appellee.

Bryant, Judge.

{¶ 1} Appellant, Robbie A. Boggs, a licensed real estate salesperson, appeals from a Franklin County Court of Common Pleas judgment affirming the disciplinary order of appellee, Ohio Real Estate Commission ("the commission"), that sanctioned Boggs for violating R.C. 4735.18. Because (1) the commission's failure to comply with procedural time limitations set forth in R.C. 4735.051(D) did not divest it of jurisdiction in this matter, (2) reliable, probative, and substantial evidence supports the commission's order, and the order is in accordance with law, and (3) the common pleas court properly applied Loc.R. 12 of the Franklin County Court of Common Pleas and resolved Boggs's assignments of error on appeal to that court, we affirm.

## I. Procedural History

{¶ 2} In early February 2006, William and Melinda Dulle were looking for undeveloped land in the Marysville area and retained Boggs to represent them as a buyer's broker. On February 4, 2006, Boggs met with the Dulles and provided them with a multiple listing service ("MLS") printout detailing 28 lots available for sale. After independently viewing several of the lots, the Dulles decided to place a bid on a 6.24–acre parcel of vacant land ("the subject property") included in the property listings. The MLS printout listed an asking price of $79,900 for the subject property and noted that the seller would pay a $4,000 agent bonus if the property's sale closed by March 12, 2006.

{¶ 3} In order to ascertain a fair price for the subject property, the Dulles requested Boggs to provide them with a market analysis of comparable properties that had sold within the previous year. Boggs restricted her market analysis to properties that were at least four acres in size and had sold in the preceding 12 months for an amount within $20,000 of the subject property's asking price. Boggs ultimately provided the Dulles with a list of five "comparables" that had sold for a minimum price of $62,000.

{¶ 4} On February 9, 2006, Boggs submitted a purchase offer on behalf of the Dulles in the amount of $78,000 for the subject property. The seller accepted the offer, and the Dulles closed on the subject property on March 10, 2006, qualifying Boggs for the $4,000 sales bonus. Several months later, the Dulles discovered from another real estate agent that the seller had purchased the subject property for $50,000 on January 31, 2006, nine days before Boggs submitted the Dulles' $78,000 purchase offer to the seller.

{¶ 5} On December 5, 2006, the Dulles filed a complaint against Boggs with the Ohio Department of Commerce, Division of Real Estate and Professional Licensing ("the division"). The Dulles alleged that Boggs had failed to disclose to them

material information concerning the value of the subject lot, including not only its sale for $50,000 on January 31, 2006, but also the sale of an adjacent lot of nearly identical shape and size that Boggs had personally listed and sold for $38,000 the previous year. They also alleged that Boggs had failed to provide adequate comparables and had failed to adequately explain the $4,000 agent bonus the seller paid.

{¶ 6} By a letter dated December 8, 2006, Kelly Davids, superintendent of the division ("the superintendent"), notified Boggs of the Dulles' complaint and allegations against her. The superintendent advised Boggs that the division was investigating the matter and directed her to furnish certain documents within 20 days to aid in the investigation. Forty days later, Boggs responded to the document request through her counsel's letter dated January 18, 2007.

{¶ 7} On November 9, 2007, the superintendent issued Boggs a "Notice of Preliminary Hearing." It stated, "The investigation conducted in this matter revealed reasonable and substantial evidence of acts in violation of R.C. Chapter 4735 of the Ohio Revised Code," acts that if proved, could subject Boggs to disciplinary action. The notice advised Boggs of the factual allegations and the six charges under R.C. 4735.18 that would be considered at a "formal" hearing. It further informed her that the hearing examiner first would hold a preliminary hearing, via telephone conference with the parties, to discuss scheduling the formal hearing and other matters. In accordance with the schedule set at the preliminary hearing, the superintendent on December 10, 2007, issued a "Notification of Formal Hearing" that advised Boggs that the formal hearing would be held on February 28, 2008.

{¶ 8} Following the formal hearing, the hearing officer on April 4, 2008, issued his report and recommendation, concluding that Boggs had committed five of the six statutory violations the division charged. More particularly, the hearing officer found that the evidence established that Boggs had committed three violations based upon breach of her fiduciary duty to her clients, contrary to R.C. 4735.62(A), (D), and (F), as incorporated in R.C 4735.18(A)(9). Pursuant to the parties' stipulations, the hearing officer also found that Boggs had committed two other violations: (1) she failed to provide her clients with a consumer guide, contrary to R.C. 4735.56(D) as incorporated in R.C. 4735.18(A)(9), and (2) she failed to provide a definite expiration date in the written agency relationship agreement she had with her clients, contrary to R.C. 4735.18(A)(28). As to the final charge that alleged that Boggs violated R.C. 4735.18(A)(3), the hearing officer found no violation. Although the evidence demonstrated that Boggs failed to disclose the January 31, 2006 sale of the subject property and the recent sale of the neighboring parcel, he concluded that her omissions did not rise to the level of a "continued course of misrepresentation."

{¶ 9} Adopting the hearing examiner's foregoing findings of fact and conclusions of law, the commission on June 12, 2008, issued an adjudication order imposing a fine on Boggs in an amount totaling $400 and requiring her to complete nine hours of education in agency, core law, and ethics in addition to her continuing-education requirements.

{¶ 10} Pursuant to R.C. 119.12, Boggs appealed the commission's disciplinary order to the Franklin County Court of Common Pleas. On November 13, 2008, the common pleas court issued a written decision (1) determining that the commission's failure to comply with procedural time limitations in R.C. 4735.051(D) did not divest it of jurisdiction and (2) affirming the commission's order because reliable, probative, and substantial evidence supports it, and it is in accordance with law. The court denied Boggs's subsequent motion for reconsideration and entered judgment affirming the commission's order.

## II.  Assignments of Error

{¶ 11} Boggs assigns four errors on appeal:

1.  The lower court abused its discretion when it refused to consider two of Boggs' assignments of error.

2.  The lower court erred as a matter of law when it failed to reverse the Commission's decision because the division was divested of jurisdiction because of the Superintendent's failure to complete the investigation within the mandatory timeframes in R.C. 4735.051.

3.  The lower court erred as a matter of law when it failed to reverse the Commission's decision because the Division failed to timely schedule and notify Boggs of the date of a Chapter 119 hearing.

4.  The lower court abused its discretion when it failed to reverse the Commission's decision because such decision is contrary to law and is not supported by reliable, probative and substantial evidence.

## III. Standard of Review

{¶ 12} In an administrative appeal under R.C. 119.12, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the administrative agency's order and the order is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110–111, 17 O.O.3d 65, 407 N.E.2d 1265. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor*

*Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. The trial court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111, 17 O.O.3d 65, 407 N.E.2d 1265. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment to determine whether the administrative order is "in accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591.

{¶ 13} This court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. This court is to determine only whether the common pleas court abused its discretion. Id. Absent an abuse of discretion, this court may not substitute its judgment for that of an administrative agency or the common pleas court. Id. On questions of law, however, this court has plenary review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, 784 N.E.2d 753, ¶ 15.

## IV. Second and Third Assignments of Error—Jurisdiction

{¶ 14} We first address Boggs's interrelated second and third assignments of error, which raise a threshold jurisdictional issue. Boggs asserts that the time limitations set forth in R.C. 4735.051(D) are mandatory, requiring the commission to complete an investigation of a complaint against a real estate licensee and to notify the licensee of the date of a hearing under R.C. Chapter 119 within the statutorily specified time frame. Boggs contends that the time limitations operate to divest the commission of jurisdiction to proceed on the complaint when the commission fails to comply with them.

{¶ 15} R.C. 4735.051(D) provides that within 60 business days after receiving a complaint, the division's investigator shall file with the superintendent a written report of the results of the investigator's investigation. The statute further provides that within 14 business days of the report being filed, the superintendent shall review the report and determine whether reasonable and substantial evidence indicates that the licensee violated R.C. 4735.18. The statute states that if the superintendent determines that such evidence exists, then within seven business days of the determination, the superintendent shall notify the complainant and licensee of the date of the R.C. Chapter 119 hearing. The statute provides that the date must be within 15 days but not earlier than seven days after notification, except that either the superintendent or the licensee may request an extension of up to 30 business days for good cause shown.

{¶ 16} Boggs concedes that the Dulles' complaint was timely filed and the commission on December 5, 2006, properly acquired jurisdiction under R.C. 4735.32 to conduct an investigation into the allegations of the complaint. She

asserts that the commission nevertheless lost jurisdiction to proceed on the charges against her when it failed to comply with the other time frames set forth in R.C. 4735.051(D).

{¶ 17} Specifically, the parties do not dispute that the division did not complete its investigation within 60 business days after it received the Dulles' complaint; similarly, the superintendent did not determine within 14 days whether the investigator's report revealed reasonable and substantial evidence that Boggs had violated R.C. 4735.18. Indeed, approximately 11 months had lapsed from the time the Dulles filed their complaint on December 5, 2006, until the superintendent notified Boggs on November 9, 2007, both that the investigation was completed and that the superintendent had determined that reasonable and substantial evidence indicated that Boggs had violated R.C. 4735.18.

{¶ 18} Boggs also contends that the division did not notify her of the formal hearing date within seven days of determining that sufficient evidence of alleged wrongdoing existed. She also asserts that the division failed to schedule the date of the R.C. Chapter 119 hearing within 15 days of notification. According to the record, the division notified Boggs on December 10, 2007, of the date for the formal hearing scheduled for February 28, 2008.

{¶ 19} The commission responds that the division timely notified Boggs of the date for the R.C. Chapter 119 hearing because on November 9, 2007, the same day the division notified Boggs of the charges in this case, it notified her of a preliminary hearing timely scheduled for November 23, 2007, and then properly continued to November 28, 2007, in accordance with R.C. 4735.051(D). The commission suggests that the preliminary hearing the hearing examiner conducted constituted the first phase of the "R.C. Chapter 119 hearing," and the hearing held on February 28, 2008, was the second, adjudicative phase of the R.C. Chapter 119 hearing.

{¶ 20} Relying on *Ohio Civ. Rights Comm. v. Countrywide Home Loans,* 99 Ohio St.3d 522, 2003-Ohio-4358, 794 N.E.2d 56, Boggs argues that the time frames set forth in R.C. 4735.051(D) are mandatory, because the statute repeatedly uses "shall." As a result, Boggs asserts that the division's failure to strictly comply with the time periods divested the commission of jurisdiction and rendered the commission's disciplinary order illegal and void. Boggs contends that the common pleas court violated the holding in *Countrywide,* as a matter of law, in determining that R.C. 4735.051(D)'s time limits are merely directory, and erred in affirming the commission's invalid order.

{¶ 21} In *Countrywide,* the Supreme Court of Ohio construed R.C. 4112.05(B)(7), which provides that any complaint the Ohio Civil Rights Commission ("OCRC") issued, based on the filing of a charge of unlawful discriminatory practice, "shall be so issued within one year after the complainant filed the

charge." The issue before the court was whether R.C. 4112.05(B)(7) is a statute of limitations for OCRC's filing a complaint or instead is a directory provision to encourage the orderly processing of discrimination claims. Id. at ¶ 3.

{¶ 22} Noting that the statute used "shall" in connection with OCRC's filing, the court applied a rule of construction addressed in *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. Accordingly, *Countrywide* concluded that " 'the word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " *Countrywide*, 99 Ohio St.3d 522, 2003-Ohio-4358, 794 N.E.2d 56, at ¶ 4, quoting *Dorrian*, paragraph one of the syllabus. The court concluded that R.C. 4112.05(B)(7) is a statute of limitations and the one-year time limit contained in the statute for filing an administrative complaint is mandatory. Id. at ¶ 6.

{¶ 23} The court's construction of R.C. 4112.05(B)(7) in *Countrywide* does not control the proper construction of R.C. 4735.051(D) because, contrary to Boggs's assertion, the two statutes are not identical. *Countrywide* involved a time limitation on when a complaint is filed. Here, Boggs admits that the complaint was timely filed; this case instead involves procedural time limitations after the commission properly acquired jurisdiction in this matter. Moreover, *Dorrian*, cited in *Countrywide*, "essentially dealt with the question whether there was a mandatory duty to act, and not when the act was to be done." *State ex rel. Webb v. Bryan City School Dist. Bd. of Edn.* (1984), 10 Ohio St.3d 27, 31, 10 OBR 178, 460 N.E.2d 1121. The rule applied in *Dorrian* does not pertain when the statutory language at issue relates to "the manner or time in which power or jurisdiction vested in a public officer is to be exercised." *Schick v. Cincinnati* (1927), 116 Ohio St. 16, 155 N.E. 555, paragraph one of the syllabus.

{¶ 24} Notwithstanding *Countrywide*, well-established case law holds that depending on the statute, a statutory time provision may be directory even when "shall" is the operative word. *In re Davis* (1999), 84 Ohio St.3d 520, 522, 705 N.E.2d 1219; *Hardy v. Delaware Cty. Bd. of Revision*, 106 Ohio St.3d 359, 2005-Ohio-5319, 835 N.E.2d 348, ¶ 23; *AmCare, Inc. v. Ohio Dept. of Job & Family Serv.*, 161 Ohio App.3d 350, 2005-Ohio-2714, 830 N.E.2d 406, ¶ 18; *Hughes v. Ohio Real Estate Comm.* (July 22, 1999), 8th Dist. No. 74480, 1999 WL 528506, quoting *In re Raymundo* (1990), 67 Ohio App.3d 262, 268, 586 N.E.2d 1149. The general rule is that "a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." *Hardy* at ¶ 22, citing *State ex rel. Ragozine v. Shaker*, 96 Ohio St.3d 201, 2002-Ohio-3992, 772 N.E.2d 1192, ¶ 13, quoting *State ex rel. Jones v. Farrar*

(1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, paragraph three of the syllabus.

{¶ 25} Accordingly, a statute will be construed as directory " 'unless the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer.' " *In re Davis,* 84 Ohio St.3d at 522, 705 N.E.2d 1219, quoting *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 255, 142 N.E. 611. See also *Schick,* 116 Ohio St. 16, 155 N.E. 555, paragraph one of the syllabus (holding that "[s]tatutes which relate to the manner or time in which power or jurisdiction vested in a public officer is to be exercised, and not to the limits of the power or jurisdiction itself, may be construed to be directory, unless accompanied by negative words importing that the act required shall not be done in any other manner or time than that designated"); *Ragozine* (holding that trial court's failure to hold a hearing within time specified in statute did not deprive it of jurisdiction to hear the case); *Immke Circle Leasing, Inc. v. Ohio Bur. of Motor Vehicles,* 10th Dist. No. 05AP–1179, 2006-Ohio-4227, 2006 WL 2349451 (holding that administrative agency did not lose jurisdiction by failing to schedule a hearing within 15–day period provided in R.C. 119.07).

{¶ 26} Some of the statutory time periods in R.C. 4735.051(D) were examined in *Hughes,* 1999 WL 528506, which found the time periods to be directory in nature, not mandatory, so that "the Commission did not lose its jurisdiction" when it failed to comply with the statutory time periods. We agree with the court in *Hughes* and conclude that R.C. 4735.051(D) falls within *Farrar* 's general rule for construing the statute's time frames as directory for the "properly, orderly and prompt conduct of public business." *Farrar,* 146 Ohio St. at 473, 32 O.O. 542, 66 N.E.2d 531. The statute does not include any expression of legislative intent to restrict the commission's jurisdiction for untimeliness in performing its acts under the statute. Cf. R.C. 4735.32 (a statute of limitations that unequivocally expresses the legislature's intent that an investigation "shall be barred" if the commission does not commence the investigation within three years from the date of the real estate licensee's allegedly wrongful conduct). Had the General Assembly intended R.C. 4735.051(D)'s time frames to be jurisdictional in nature, it could have explicitly so stated, as it did in R.C. 4735.32.

{¶ 27} Because the time frames in R.C. 4735.051(D) are directory, the commission did not lose jurisdiction for failing to act within the statutory time periods. As a result, in claiming reversible error in the commission's failure to meet the statutory time limitations, Boggs also must demonstrate prejudice. *Hughes,* 1999 WL 528506, citing *In re Heath* (1992), 80 Ohio App.3d 605, 608, 609 N.E.2d 1346. Boggs maintained her real estate license throughout the proceed-

ings, and she neither alleged nor demonstrated any prejudice resulting from any delays in this matter.

{¶ 28} In the final analysis, the time frames set forth in R.C. 4735.051(D) are not mandatory or jurisdictional, but instead are directory, to encourage the "proper, orderly and prompt conduct of public business." *Farrar*, 146 Ohio St. at 473, 32 O.O. 542, 66 N.E.2d 531. The commission's failure to comply with the time frames expressed in R.C. 4735.051 did not divest the division of jurisdiction. Moreover, its failure to meet the statutory time limitations does not amount to reversible error, as Boggs did not demonstrate that the delay prejudiced her in any way. Accordingly, because the common pleas court did not err in determining that the commission had jurisdiction to enter the disciplinary order in this matter, Boggs's second and third assignments of error are overruled.

## V.  Fourth Assignment of Error—Licensee's Duty to Disclose Material Information

{¶ 29} In her fourth assignment of error, Boggs contends that the common pleas court abused its discretion in affirming the commission's order because not only does reliable, probative, and substantial evidence not support the commission's decision, but the decision is contrary to law. Boggs specifically challenges the commission's findings that she breached her fiduciary duty to her clients and violated R.C. 4735.62(A), (D), and (F). Boggs does not contest the commission's findings, pursuant to the parties' stipulations, that she violated both R.C. 4735.56(D), in failing to provide a consumer guide, and R.C. 4735.18(A)(28), in failing to provide an expiration date on the agency agreement with her clients.

{¶ 30} The commission premised its conclusion on Boggs's failure to disclose to her clients, before they submitted a purchase offer on February 9, 2006, in the amount of $78,000, the information concerning the January 31, 2006 sale of the subject property for substantially less. Boggs contends that the commission could not sanction her because no Ohio statute, administrative rule, or canon of ethics imposed a specific duty upon her to disclose the subject property's prior sale price. As a result, Boggs contends, she did not have "reasonable notice" that her conduct breached her fiduciary duty.

{¶ 31} The right to engage in the real estate business is in the nature of a privilege granted by the state, which has an interest in promoting the character, honesty, and intellectual competence of real estate licensees. *Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce, Div. of Real Estate* (1990), 48 Ohio St.3d 74, 76, 549 N.E.2d 509. A real estate licensee is held to a higher standard than members of the general public, and a real estate license imposes a duty on a licensee to conform to the statutory standards set forth in R.C. Chapter 4735. Id.; *Hughes*, 1999 WL 528506; *Alban v. Ohio Real Estate Comm.* (1981), 2

Ohio App.3d 430, 434–435, 2 OBR 524, 442 N.E.2d 771. Accordingly, the General Assembly charged the commission with the responsibility of regulating the real estate profession and adopting canons of ethics. R.C. 4735.03; *Kiko* at 76, 549 N.E.2d 509. R.C. 4735.18(A) authorizes the commission "to investigate the conduct of any licensee" and "to impose disciplinary sanctions upon any licensee" who "is found guilty" of having violated any provisions of R.C. Chapter 4735. See R.C. 4735.18(A)(9).

{¶ 32} R.C. 4735.62 imposes a fiduciary duty upon a real estate licensee to "use the licensee's best efforts to further the interest of the client." The statute specifies, as relevant here, that the duty requires the agent to exercise "reasonable skill and care in representing the client and carrying out the responsibilities of the agency relationship." R.C. 4735.62(A). In addition, the agent must perform "all duties specified in this chapter in a manner that is loyal to the interest of the client." R.C. 4735.62(D). Finally, the agent must disclose to his or her client "any material facts of the transaction" of which the agent "is aware or *should be aware* in the exercise of reasonable skill and care and that are not confidential information pursuant to a current or prior agency or dual agency relationship." (Emphasis added.) R.C. 4735.62(F). Similarly, Section 2, Article 7 of the Canons of Ethics for the Real Estate Industry, which the commission adopted pursuant to R.C. 4735.03(A), provides that licensees "should disclose all known material facts concerning a property on which the licensee is representing a seller or a purchaser to avoid misrepresentation or concealment of material facts." The statutory fiduciary duties established in R.C. 4735.62 may not be waived, R.C. 4735.621(A), and are in addition to those under common law. R.C. 4735.52.

{¶ 33} In a disciplinary action, the commission may rely on its own expertise in deciding whether a licensee engaged in conduct that violates the laws, rules, or standards of the real estate industry. *Kiko*, 48 Ohio St.3d at 77, 549 N.E.2d 509; *iNest Realty, Inc. v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP–871, 2005–Ohio–3621, ¶ 21; *Hughes v. Ohio Div. of Real Estate* (1993), 86 Ohio App.3d 757, 760, 621 N.E.2d 1249; *Vradenburg v. Ohio Real Estate Comm.* (1982), 8 Ohio App.3d 102, 104, 456 N.E.2d 573. Upon review, we accord deference to the commission's determination that certain conduct is contrary to law or a standard of practice in the industry. *iNest Realty; Hughes* at 760, 621 N.E.2d 1249; *Vradenburg*. Misconduct includes unprofessional conduct or "conduct involving any breach of duty which is prohibited under professional codes of ethics, or conduct which is contrary to law." *Kiko* at paragraph two of the syllabus; *iNest Realty* at ¶ 21.

{¶ 34} At the adjudicative hearing, Boggs acknowledged that the Dulles retained her to act as a buyer's broker and, pursuant to their request, she

searched the MLS in order to provide them with a market analysis of "comparables" in relation to the subject property. Without consulting her clients, Boggs included a price restriction in her MLS search parameters that resulted in a list of five "comparables," each at least four acres in size and having a minimum price of $62,000. Because Boggs restricted her search to properties within $20,000 of the subject property's $79,900 asking price, the list of "comparables" she generated and provided to her clients did not include the sale of the subject property on January 31, 2006, for $50,000. Nor did it include the adjacent parcel that Boggs had personally listed and sold for $38,000 in the previous year. Evidence presented at the adjudication hearing demonstrated that an MLS search of comparably sized properties without the price restriction would have produced a list of nine "comparables" that would have included the prior sales of both the subject property and the neighboring parcel.

{¶ 35} Boggs admitted that she knew that the subject property had recently sold but stated that she did not know the date or price of the sale. She testified that she checked the auditor's website to discover the details of the transaction but, when she failed to find the information on the auditor's website, she inquired no further. Evidence presented at the hearing revealed that Boggs would have discovered the January 31, 2006 sale of the subject property had she gone to the auditor's office, a short distance from her own office. Similarly, she would have learned of the sale had she performed an MLS "archive search" of the subject property, a function Boggs admitted that she knew how to do. She did neither and did not disclose the recent sale of the subject property to her clients.

{¶ 36} Boggs's argument that the evidence is lacking is unpersuasive. Pursuant to R.C. 4735.62(A), (D), and (F), and the Ohio real estate industry's canons of ethics, Boggs was on notice that a licensee, in performing duties loyal to the client's interest, has a duty to disclose to the client material facts concerning a property under consideration when the licensee, "in the exercise of reasonable skill and care," either is aware or "should be aware" of the information. Boggs acknowledges that the immediate past sale price of a property that prospective buyers are considering for purchase is material information. Evidence at the adjudication hearing demonstrated that Boggs knew about the prior sale of the subject property and could have obtained information regarding the details of the transaction if she had exercised reasonable skill and care, but she failed to disclose that material information to her clients.

{¶ 37} Accordingly, reliable, probative, and substantial evidence supports the commission's determination that Boggs breached her fiduciary duty under R.C. 4735.62(A), (D), and (F), and its decision is not contrary to law. Because the common pleas court did not abuse its discretion by affirming the commission's

decision that Boggs violated R.C. 4735.62(A), (D), and (F), the fourth assignment of error is overruled.

## VI.   First Assignment of Error—Enforcement of Local Court Rule

{¶ 38} Finally, Boggs's first assignment of error contends that the common pleas court abused its discretion when it struck portions of her merit and reply briefs.  Boggs asserts that the common pleas court effectively dismissed two of her three assignments of error due to her inadvertent technical violations of a local court rule imposing page limitations for such briefs.

{¶ 39} Franklin County Court of Common Pleas ("FCCP") Loc.R. 12, Page Limitations, applies to administrative appeals to that court.  The rule limits briefs to 15 pages and reply briefs to seven pages.  The rule, however, allows an exception if counsel files a motion for leave to file a brief exceeding the page limitations and, in support, sets forth the "unusual and extraordinary circumstances which necessitate exceeding the page limitation."  FCCP Loc.R. 12.

{¶ 40} Boggs's merit brief filed in the common pleas court was 29 pages and her reply brief was 12 pages, excluding the certificate-of-service pages.  Noting that Boggs neither sought nor was granted a leave of court to file longer briefs, the common pleas court's decision stated that it would "address only the first fifteen pages of Appellant's brief and seven pages of the reply, and the underlying record of proceedings."  In doing so, the court determined that the commission was not divested of jurisdiction, that reliable, probative, and substantial evidence supported the commission's order, and that the order was in accordance with law.  Accordingly, the common pleas court affirmed the commission's order.

{¶ 41} Boggs moved for reconsideration, arguing that the common pleas court's decision to dismiss two of her three assignments of error without deciding their merits was a harsh sanction for a technical and inadvertent violation of FCCP Loc.R. 12.  The court rejected Boggs's arguments and denied the motion, finding that Boggs "offered nothing to support the contention that the error was technical and inadvertent."  The court further stated, "[T]he decision did consider the merits of the assigned errors and there was no dismissal based upon the failure to adhere to the rules of court."  As the court explained, it "considered the law and facts applicable to the assignments of error and there was no effective dismissal of appellant's claims."

{¶ 42} Courts in Ohio may adopt local rules as long as those rules are not inconsistent with any rules governing practice and procedure that the Supreme Court of Ohio promulgates.  Section 5, Article IV of the Ohio Constitution; Civ.R. 83; *Ohio Furniture Co. v. Mindala* (1986), 22 Ohio St.3d 99, 22 OBR 133, 488 N.E.2d 881; *Capital One v. Burkey,* 11th Dist. No. 2008–L–084, 2008-Ohio-5944, 2008 WL 4901741, ¶ 14.  The enforcement of local court rules is well within the sound discretion of the court, including the power to strike a brief that

does not comply with those rules. *Capital One* at ¶ 15–16; *Doerman v. Doerman,* 12th Dist. No. CA2001–03–071, 2002-Ohio-3165, 2002 WL 1358792, ¶ 22.

{¶ 43} Boggs did not demonstrate unusual and extraordinary circumstances justifying her lengthy, out-of-rule briefs; nor did she show that the reason she did not comply with the rule was merely technical or inadvertent error. Accordingly, the court did not abuse its discretion when it enforced FCCP Loc.R. 12 and refused to consider the portion of Boggs's brief that violated the rule's page limitations.

{¶ 44} Boggs's further assertion that the common pleas court did not consider and decide the merits of her assigned errors is without merit. Not only did Boggs fail to support her assertion that the common pleas did not consider and decide the merits of her assignments of error, but a review of the common pleas court's November 13, 2008 Decision on Merits of Appeal supports the court's assertion that it "did consider the merits of the assigned errors and there was no dismissal based upon the failure to adhere to the rules of court."

{¶ 45} Because the common pleas court did not abuse its discretion by enforcing FCCP Loc.R. 12, and the record indicates that the court considered and decided the merits of Boggs's assignments of error presented to that court, we overrule Boggs's first assignment of error.

{¶ 46} Having overruled each of Boggs's four assignments of error, we affirm the judgment of the common pleas court.

Judgment affirmed.

SADLER and CONNOR, JJ., concur.