OPINION
{¶ 1} Appellant, Aysar, Inc. d/b/a Jet-In Market ("appellant"), appeals from the decision of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor Control Commission ("commission"), in which the commission affirmed the order of the Ohio Department of Commerce, Division of Liquor Control ("division") denying the renewal of appellant's liquor permit.
 {¶ 2} The record reveals the following facts and procedural history. Appellant operates a market located on Linn Street in Cincinnati, Ohio, and held a C-1-2, D-6 liquor *Page 2 
permit for the sale of beer and wine for off-premises consumption. On April 24, 2002, the City Council for the City of Cincinnati ("the city"), passed a resolution to object to the renewal of appellant's liquor permit. On May 1, 2002, the city faxed to the division an objection to the renewal of appellant's permit for the years 2002-2003, 2003-2004, and 2004-2005. The division received the city's fax on May 1, 2002, and time-stamped the objection the following morning, May 2, 2002.
 {¶ 3} Following a properly noticed hearing, a hearing officer recommended that the division sustain the objection and deny appellant's renewal application. Accordingly, the division denied appellant's application for renewal of its permit for the years 2002-2003, 2003-2004, and 2004-2005. Specifically, the division found that the permit premises "[i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * renewal. * * *" R.C.4303.292(A)(2)(c).
 {¶ 4} Appellant appealed to the commission, which conducted a hearing on the matter. Subsequently, the commission affirmed the division's order. Appellant timely appealed and presented two arguments to the court of common pleas. First, appellant argued that the commission's order is not in accordance with law because the city's objection was not timely made under R.C. 4303.271(B). Second, appellant argued that the commission's order is not supported by reliable, probative and substantial evidence. The court of common pleas rejected both arguments and affirmed the order of the commission.
 {¶ 5} Appellant timely appealed to this court and advances two assignments of error for our review, as follows: *Page 3 
 I. THE ORDER OF THE LIQUOR CONTROL COMMISSION IS NOT IN ACCORDANCE WITH LAW BECAUSE THE ORIGINAL RESOLUTION OF OBJECTION AND THE ACCOMPANYING LETTER WERE NOT TIMELY POSTMARKED VIOLATING THE REQUIREMENTS OF R.C. 4303.271.
 II. THE ORDER OF THE LIQUOR CONTROL COMMISSION IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
 {¶ 6} Under R.C. 119.12, when the trial court reviews an order of an administrative agency, the trial court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law.Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111,407 N.E.2d 1265; see, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390.
 {¶ 7} The trial court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence and the weight thereof.' " Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quotingAndrews at 280. In its review, the trial court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra.
 {¶ 8} An appellate court's review of an administrative decision is more limited than that of a trial court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, rehearing denied,67 Ohio St.3d 1439, 617 N.E.2d 688. In Pons, the Supreme Court of Ohio noted: "* * * [w]hile it is incumbent on the trial court to examine the *Page 4 
evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion[.] * * * Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." Id. On questions of law, however, our review is de novo. Ralker's, Inc. v. OhioLiquor Control Comm., 10th Dist. No. 05AP-1072,2006-Ohio-4778, ¶ 8.
 {¶ 9} In support of its first assignment of error, appellant argues that the commission's order is not in accordance with law because the city's objection was not timely submitted pursuant to R.C. 4303.271. That statute provides, in pertinent part:
 (B) The legislative authority of the municipal corporation, the board of township trustees, or the board of county commissioners of the county in which a permit premises is located may object to the renewal of a permit issued under sections 4303.11 to 4303.183 of the Revised Code for any of the reasons contained in division (A) of section 4303.292 of the Revised Code. Any objection shall be made no later than thirty days prior to the expiration of the permit, and the division shall accept the objection if it is postmarked no later than thirty days prior to the expiration of the permit. * * * The resolution shall be accompanied by a statement by the chief legal officer of the political subdivision that, in the chief legal officer's opinion, the objection is based upon substantial legal grounds within the meaning and intent of division (A) of section 4303.292 of the Revised Code.
(Emphasis added.)
 {¶ 10} Appellant urges us to read the sentence of subsection (B) that is italicized above to require that all objections must be submitted via U.S. mail and by no other means of delivery, and that because the city's objection was faxed and not mailed (and, as a result, it was not "postmarked no later than thirty days prior to the expiration of the permit") the objection was untimely and should not have been considered. Appellant *Page 5 
argues that, absent specific language permitting the submission of objections by fax, such method of delivery is simply not permitted.
 {¶ 11} In response, the commission argues that the language of R.C.4303.271(B) does not mandate any particular means of delivery of objections and requires only that the objection be "made" no later than 30 days prior to the expiration of the permit in question. The commission contends that the provision regarding acceptance of objections delivered via U.S. mail is not a mandate as to the method of delivery but is designed merely to give cities, townships and counties the benefit of an extension equivalent to the amount of time it takes the U.S. Postal Service to deliver an objection that is placed in the mail and postmarked by the 30-day deadline in the statute. It requires the division to accept — and concomitantly prohibits it from rejecting — those objections that are received later than the deadline but that were postmarked by the deadline.
 {¶ 12} The commission argues that because the statute neither requires or prohibits any particular method of delivery of objections, delivery via fax is perfectly acceptable and is in no way prohibited merely because the statute contains a postmark-related provision. Thus, the commission maintains, because the record demonstrates that the division received the city's fax on May 1, 2002, which is not later than 30 days prior to the June 2, 2002 expiration date for appellant's permit, the city's objection was timely made under R.C. 4303.271(B).
 {¶ 13} First, we hasten to note that the division rejected appellant's renewal application not solely based upon the city's objection, but also for "good cause," which is an entirely independent and acceptable reason for renewal rejection. Sowders v. Ohio *Page 6 Liquor Control Comm. (Aug. 4, 2000), 2nd Dist. No. 18173. Indeed, the division rejected appellant's application because it found that the permit premises, "[i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * renewal. * * *" R.C. 4303.292(A)(2)(c). Therefore, even if the city's objection were untimely, this would not render the commission's order contrary to law.
 {¶ 14} Moreover, we reject appellant's argument on the authority ofSlammers Grill Bar, LLC v. Liquor Control Comm., 10th
Dist. No. 06AP-239, 2006-Ohio-6653. In that case, a panel of this court rejected the identical argument, holding that, "R.C. 4303.271 does not mandate that the objection be mailed, but, rather, states that, if mailed and postmarked by the due date, the objection shall be accepted." Id. at ¶ 8.
 {¶ 15} "* * * [T]he one-year period comprising the life of a liquor permit begins at the first instant after midnight on the day after the date of its issuance and ends at midnight a year later."Frontier-Embers Supper Club v. Bd. of Liquor Control (1960),112 Ohio App. 325, 85 Ohio L.Abs. 97, 172 N.E.2d 717, paragraph two of the syllabus. The objection deadline is calculated by excluding the first day and including the last day of the period. Slammers Grill Bar, supra, at ¶ 7; see, also, Frontier-Embers at paragraph three of the syllabus. The record reveals that the date printed on appellant's permit is June 1. Thus, the life of its liquor permit began at the first instant after midnight on June 2, 2001, and expired at midnight on June 2, 2002. Consequently, any objection filed by the city was required to be made no later than May 3, 2002.
 {¶ 16} At the hearing before the division, appellant acknowledged that the division received the objection no later than May 2, 2002. (Tr.10-11.) A division attorney testified *Page 7 
that the division received the objection via fax on May 1, 2002, and time-stamped it the following morning, May 2, 2002. Moreover, the record reveals that the objection was accompanied by a letter (dated April 24, 2002, faxed on May 1, 2002 and time-stamped by the division on May 2, 2002) from City Solicitor Fay Dupuis, in which she opines that the objection was based upon substantial legal grounds within the meaning and intent of division (A) of section 4303.292 of the Revised Code. The evidence thus establishes that the city made its objection to appellant's renewal application no later than 30 days prior to the expiration of the permit, and that the requisite statement of opinion accompanied its objection. Accordingly, the city's objection was made timely and in compliance with the other requirements of R.C. 4303.271. For this reason, appellant's first assignment of error is overruled.
 {¶ 17} In support of its second assignment of error, appellant argues that the commission's order was not supported by reliable, probative and substantial evidence and, therefore, the court of common pleas abused its discretion in affirming that order.
 {¶ 18} Pursuant to R.C. 4303.271, a permit holder is entitled to renewal of its liquor permit unless good cause exists to reject the renewal application. Marciano v. Ohio Liquor Control Comm., 10th Dist. No. 02AP-943, 2003-Ohio-2023. The division has the burden of proving, by a preponderance of the evidence, good cause for the rejection of the renewal permit. In re Appeal of Mendlowitz
(1967), 9 Ohio App.2d 83, 86, 38 O.O.2d 77, 222 N.E.2d 835. This includes proof of the ground upon which the division relied in denying renewal, which, in the present case, is that the permit premises, "[i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * renewal. * * *" R.C. *Page 8 4303.292(A)(2)(c). Indeed, the division must begin with a presumption that the renewal of the permit will not prejudice the maintenance of public decency, sobriety and good order. Ohio Adm. Code 4301:1-1-12(B).
 {¶ 19} As noted above, the division must sustain its burden of proof with reliable, probative and substantial evidence. "The evidence required by R.C. 119.12 can be defined as follows: (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303. (Footnotes omitted.)
 {¶ 20} Appellant argues that the evidence adduced did not provesubstantial interference by a preponderance of the evidence. Appellant argues that, while the evidence established that drug trafficking is rampant in the surrounding neighborhood, there was little evidence tying the permit premises to the trafficking in drugs, and thus the evidence did not demonstrate that denial of its permit would improve the neighborhood. But there is no requirement that the evidence show that denial of the permit would improve the neighborhood.
 {¶ 21} Proof is required, however, that the permit premises "[i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * renewal. * * *" R.C. 4303.292(A)(2)(c). By the plain language of the statute, it is the renewal — not the business operations *Page 9 
themselves — that must substantially interfere with public decency, sobriety, peace, or good order. This is an important distinction.
 {¶ 22} Appellant argues that the evidence was insufficient because it lacked the requisite substance and details to link the nefarious activities described therein to the permit premises. In response, the commission cites numerous cases in which this court and the Supreme Court of Ohio have held that, with respect to denial under R.C.4303.292(A)(2)(c), the focus is on the location of the permit premises, and its effect on the surrounding neighborhood, not on whether the permit holder conducts satisfactory or unsatisfactory business operations. Maggiore v. Liquor Control Comm. (Mar. 29, 1996), 10th Dist. No. 95APE06-713 ("The focus of [substantial interference grounds] is the location of the permit business — not the person who operates the business."); Buckeye Bar, Inc. v. Liquor ControlComm. (1972), 32 Ohio App.2d 89, 61 O.O.2d 90, 288 N.E.2d 318
("Environmental conditions relating to public decency, sobriety, and good order may, where those conditions are extreme enough, constitute `good cause' to reject a renewal application under Section 4303.271, Revised Code, regardless of the permit holder's personal fitness or satisfactory business operations"); Our Place, Inc. v. Ohio LiquorControl Comm. (1992), 63 Ohio St.3d 570, 589 N.E.2d 1303 "[T]he location of proposed permit premises can be the only factor to be considered by the department in deciding not to issue a permit."
 {¶ 23} The commission argues that the evidence adduced at the hearing before the division amply demonstrates, in sufficient detail, the ways in which renewal of appellant's permit would substantially interfere with public decency, sobriety, peace, and good order. *Page 10 
 {¶ 24} Upon our review of the record, we agree that the division presented reliable, probative and substantial evidence to prove by a preponderance of the evidence that renewal of appellant's permit would substantially interfere with public decency, sobriety, peace, and good order. The division presented the testimony of Officers Robert Nelson, Matt Martin and Melissa Cummins, all of the Cincinnati Police Department.
 {¶ 25} Officer Nelson testified that individuals known to police to be criminals loiter around the permit premises and that the Jet-In Market is one of the "top 10" worst liquor premises in the city. The premises are across the street from a city recreation center and a housing complex with a park. Officer Nelson testified that police were routinely called to the permit premises to respond to incidents of drug trafficking, the presence of wanted individuals, disorderly conduct and assault, robbery, firearms violations, and menacing. Police records offered into evidence through Officer Nelson's testimony demonstrated that police made 1,400 runs to the location of the Jet-In Market in the year 2002 alone. Records revealed that from July 2003 through April 2004, offenses such as robberies, burglaries, aggravated assaults, domestic violence, resisting arrest and drug possession occurred within 500 feet of the permit premises. Officer Nelson described this level of activity as "very high" and characterized the Jet-In Market as a significant drain on the resources of the police department.
 {¶ 26} He testified that runs were recorded as being located at Jet-In Market's address if the incident happened either inside the market, outside the market but on the market's property, or in its adjacent parking lot. Officer Nelson also noted that there is another carryout market with a liquor permit within a few hundred feet of the permit *Page 11 
premises, and the police have "no problems" with that location because "they don't allow anybody hanging around the building." (Tr. 82.)
 {¶ 27} Officer Martin testified that in 2002, he performed maintenance work at the Jet-In Market when he worked in the construction industry before becoming a police officer. While engaged in that maintenance work, he witnessed individuals openly traffic in marijuana inside the store. He also witnessed individuals at the market call out "boys" whenever police officers would drive past, whereupon they would run to stash items underneath shelves inside the market. As a police officer, he witnessed assaults and drug activity at the permit premises, and responded to a homicide at the premises in which the victim was shot and killed in the parking lot near the front door of the market. Officer Martin stated that large crowds gather around the Jet-In Market, and copious amounts of litter from the permit premises blow across the street on windy days and into the street and the nearby park. He characterized the market as a "burden on the community" because it attracts open-air drug sales, large crowds, and "shootings that take place at 6:00 or 7:00 in the evening" with "kids right next door." (Tr. 99.)
 {¶ 28} Officer Cummins testified that she has witnessed "heavy" drug trafficking inside, outside and behind the Jet-In Market. She stated that shootings, thefts, and assaults have occurred at the permit premises. On one occasion, she witnessed a suspect that she later arrested run into the market and toss a bag of marijuana underneath shelving that contained food items for sale. Officer Cummins stated that she and her partner took a special interest in trying to combat crime in and around the Jet-In Market because "there are so many children" in the area. (Tr. 108.) She described the neighborhood as very "family-oriented." She stated that area residents asked her and her *Page 12 
partner for help because they were scared to go into the Jet-In Market due to the drug activity and violence there, but needed to shop there because the nearest grocery store is at least one mile away. She explained that the Jet-In Market is very near access to a major interstate and that, as a result, "[y]ou can buy a bag of weed in front of the Jet-In, inside the Jet-In, or beside the Jet-In, and be in Kentucky in probably 50 seconds." (Tr. 111.) She characterized the police activity at the Jet-In Market as "[e]xtremely high." (Tr. 118.) She, too, stated that she has never been called to another liquor permit premises located about one block away from the Jet-In.
 {¶ 29} On this record, we find no abuse of discretion in the trial court's finding that the commission's order was supported by reliable, probative and substantial evidence establishing good cause for the denial of appellant's liquor permit renewal application. The record contains copious evidence supporting the finding that the permit premises is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the renewal of appellant's liquor permit. Based upon the foregoing, we overrule appellant's second assignment of error.
 {¶ 30} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1