D.L. LACK CORPORATION, Appellant,

v.

LIQUOR CONTROL COMMISSION, Appellee.

[Cite as *D.L. Lack Corp. v. Liquor Control Comm.*,
191 Ohio App.3d 20, 2010-Ohio-6172.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–400.

Decided Dec. 16, 2010.

The Gearhiser Law Firm, Inc., and Kurt O. Gearhiser, for appellant.

Richard Cordray, Attorney General, and Scott A. Longo, Assistant Attorney General, for appellee.

KLATT, Judge.

{¶ 1} Appellant, D.L. Lack Corporation ("Lack"), appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of the Liquor Control Commission ("commission"), which affirmed the decision of the Division of Liquor Control ("division") to deny the 2008–2009 renewal of Lack's D–5–6 liquor permit. For the following reasons, we affirm.

{¶ 2} Since 2000, Lack has held a D–5–6 liquor permit for Don's Glenway Gate, a bar located in the Price Hill neighborhood of Cincinnati.[1] On April 16, 2008, the city of Cincinnati submitted to the division an objection to the renewal of Lack's liquor permit. The Cincinnati City Counsel cited two reasons for its objection: (1) Lack had operated the liquor permit premises in a manner that demonstrated disregard for the laws, regulations, and local ordinances of Ohio, and (2) the permit premises was so located with respect to the neighborhood that continued operation of the business would cause substantial interference with the public decency, sobriety, peace, and good order of the neighborhood.

{¶ 3} Over the course of three days, the division held a hearing to determine whether it should deny Lack's liquor permit for either of the reasons the city cited. Apparently, a hearing examiner appointed by the division conducted this hearing. In a letter dated February 27, 2009, the division superintendent informed Lack that the division had decided to reject Lack's renewal application. The division based its decision on both of the reasons the city had asserted in its objection.

{¶ 4} Lack appealed the division's decision to the commission. Before the commission, Lack filed a motion to reverse the division's decision. Lack argued that the division did not follow the R.C. 119.09 requirements that it serve upon Lack a copy of the hearing examiner's report and recommendation and that it send Lack a certified copy of the division's decision. According to Lack, this noncompliance with R.C. 119.09 rendered the division's decision invalid.

---

1. Some witnesses and documents refer to the bar as "Don's Corner Pub."

{¶ 5} The commission held an evidentiary hearing on Lack's appeal. In an order dated October 9, 2009, the commission overruled Lack's motion to reverse and affirmed the division's refusal to renew Lack's liquor permit.

{¶ 6} Lack appealed the commission's order to the trial court. On March 30, 2010, the trial court issued a judgment affirming the commission's order. Lack now appeals that judgment to this court, and it assigns the following errors:

[1.] The court below erred when it found that the Division of Liquor Control was not required to meet the procedural requirements of R.C.119.09.

[2.] The court below erred by affirming the order of the Liquor Control Commission because the evidence presented to the Liquor Control Commission did not support a finding of substantial interference with public decency, sobriety, peace or good order of the neighborhood.

{¶ 7} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303. To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. Id. To be "substantial," evidence must have some weight; it must have importance and value. Id.

{¶ 8} In reviewing the record for reliable, probative, and substantial evidence, the trial court " 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *AmCare, Inc. v. Ohio Dept. of Job & Family Servs.,* 161 Ohio App.3d 350, 2005-Ohio-2714, 830 N.E.2d 406, ¶ 9, quoting *Lies v. Ohio Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584. In doing so, the trial court must give due deference to the administrative resolution of evidentiary conflicts because the agency, as the fact-finder, is in the best position to observe the manner and demeanor of the witnesses. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 9} Unlike a trial court, an appellate court may not review the evidence. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. An appellate court is limited to determining whether the trial court abused its discretion. Id. Absent such an abuse of discretion, an appellate court must affirm the trial court's judgment, even if the appellate court would have arrived at a different conclusion from the trial court. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264. When reviewing the trial court's judgment as to whether an agency's decision is

in accordance with law, an appellate court's review is plenary. *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14.

{¶ 10} By its first assignment of error, Lack argues that because the division failed to follow the requirements of R.C. 119.09, the commission's order is not in accordance with law. We disagree.

{¶ 11} R.C. 119.09 specifies how an agency must conduct an adjudication hearing required by R.C. 119.01 to 119.13, as well as what steps the agency must take after the hearing to decide the matter and inform the parties of its decision. R.C. 119.09 provides:

> In any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency may appoint a referee or examiner to conduct the hearing. * * * The referee or examiner shall submit to the agency a written report setting forth the referee's or examiner's findings of fact and conclusions of law and a recommendation of the action to be taken by the agency. A copy of such written report and recommendation of the referee or examiner shall within five days of the date of filing thereof, be served upon the party or the party's attorney or other representative of record, by certified mail. * * * The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency. * * *

> After [the agency's] order is entered on its journal, the agency shall serve by certified mail, return receipt requested, upon the party affected thereby, a certified copy of the order and a statement of the time and method by which an appeal may be perfected.

Lack contends that the division violated this statute by (1) failing to send Lack or its attorney a copy of the hearing examiner's report and recommendation and (2) failing to mail Lack a certified copy of its order.

{¶ 12} Lack's argument presumes that the relevant provisions of R.C. 119.09 apply to the division's adjudication of the city's objections to the renewal of Lack's liquor license. This presumption is misplaced. The R.C. 119.09 provisions at issue apply only to an "adjudication hearing *required by sections 119.01 to 119.13 of the Revised Code*." (Emphasis added.) Of the enumerated sections, R.C. 119.06 specifically addresses when an agency must hold an adjudication hearing. As a general matter, R.C. 119.06 requires an agency to conduct an adjudication hearing before issuing any adjudication order. However, exceptions to this requirement exist. Pursuant to R.C. 119.06(C), an adjudication hearing is not necessary if "the statutes pertaining to [the] agency specifically give a right of appeal * * * to another agency, * * * and also give the appellant a right to a hearing on such appeal."

{¶ 13} Here, two statutes gave Lack a right to appeal to another agency, i.e., the commission, from the division's refusal to renew the liquor permit. First, R.C. 4303.271(A) provides that the division's rejection of a renewal application is "subject to the right of the applicant to appeal the rejection to the liquor control commission." Second, R.C. 4301.28(A)(1) allows "[a]ny person aggrieved [to] appeal to the liquor control commission from the action of the division of liquor control in refusing to issue a permit." Moreover, any person who appeals the denial of a renewal to the commission receives a hearing. R.C. 4301.04(B) states, "The liquor control commission shall accord a hearing to any person appealing [a decision of the division] * * *, at which such person has the right to be present, to be represented by counsel, to offer evidence, and to require the attendance of witnesses." [2]

{¶ 14} Because the statutes governing liquor control gave Lack a right to appeal the division's decision to the commission and obtain a hearing on the appeal, the R.C. 119.06(C) exception to the hearing requirement applies. Consequently, nothing in R.C. 119.01 to 119.13 requires the division to conduct an adjudication hearing before refusing to renew a liquor license. As R.C. 119.01 to 119.13 do not include a mandate for an adjudication hearing, the relevant provisions of R.C. 119.09 do not control the division's adjudication of the city's objections to the renewal of Lack's liquor permit.

{¶ 15} We recognize, of course, that the division held a hearing prior to issuing its decision on the city's objections and Lack's renewal application. That hearing, however, occurred by the command of R.C. 4303.271(B), not R.C. 119.06. As we stated above, the relevant provisions of R.C. 119.09 govern only "adjudication hearing[s] *required by sections 119.01 to 119.13 of the Revised Code.*" (Emphasis added.) Thus, those provisions do not pertain to adjudication hearings required by R.C. 4303.271(B), such as the hearing that the division conducted in this matter. Accordingly, we overrule Lack's first assignment of error.

{¶ 16} By Lack's second assignment of error, it argues that the trial court abused its discretion in finding that reliable, probative, and substantial evidence supported the commission's order. We disagree.

{¶ 17} R.C. 4303.292 allows the division to refuse to renew a liquor permit if it finds either of the following:

(1) That the applicant, or any * * * officer * * * of the applicant * * *:
* * *

---

2. During and after this hearing, the commission must follow the requirements of R.C. 119.09. Thus, Lack received an R.C. Chapter 119 hearing before the commission. Lack, however, contends that the law entitles him to *two* R.C. Chapter 119 hearings: one before the division and one before the commission.

(b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;

* * *

(2) That the place for which the permit is sought:

* * *

(c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * renewal * * *.

Here, the division refused to renew Lack's liquor permit for the grounds stated in both R.C. 4303.292(A)(1)(b) and 4303.292(A)(2)(c). The commission affirmed the division's decision on both grounds, and the trial court, in turn, affirmed the commission's order on both grounds. Lack, however, assigns as error only the trial court's ruling on the R.C. 4303.292(A)(2)(c) ground for the denial of Lack's renewal application. The assignment of error does not dispute the trial court's ruling on the R.C. 4303.292(A)(1)(b) ground.

{¶ 18} Either of the two R.C. 4303.292(A) grounds at issue could independently support the decision to deny Lack a renewal of its liquor permit. *Our Place, Inc.*, 63 Ohio St.3d at 572, 589 N.E.2d 1303; *Colon v. Ohio Liquor Control Comm.*, 10th Dist. No. 09AP–325, 2009-Ohio-5550, 2009 WL 3367847, ¶ 27; *Marciano v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP–943, 2003-Ohio-2023, 2003 WL 1908247, ¶ 19. Thus, to achieve a reversal of the trial court's judgment, Lack needs to establish that the evidence is insufficient to prove *both* grounds. Because Lack failed to challenge the trial court's ruling on the R.C. 4303.292(A)(1)(b) ground, the trial court's judgment could stand regardless of the merits of Lack's assignment of error. In other words, even if we were to sustain Lack's assignment of error, we could still affirm the trial court's judgment based on that court's finding that reliable, probative, and substantial evidence supported the R.C. 4303.292(A)(1)(b) ground for denial of the renewal.

{¶ 19} Although Lack did not assign as error the trial court's ruling on the R.C. 4303.292(A)(1)(b) ground, it does assert an argument against that ruling in its brief. As a general matter, this court rules only on assignments of error, not mere arguments. App.R. 12(A)(1)(b); *Olentangy Condominium Assn. v. Lusk*, 10th Dist. No. 09AP–568, 2010-Ohio-1023, 2010 WL 927002, ¶ 25. Nevertheless, in the interest of justice, we may exercise our discretion to consider arguments not separately assigned. *Groves v. Groves*, 10th Dist. No. 09AP–1107, 2010-Ohio-4515, 2010 WL 3722641, ¶ 10. We will do so here and address both the R.C. 4303.292(A)(1)(b) and 4303.292(A)(2)(c) grounds in our analysis of Lack's second assignment of error.

{¶ 20} With regard to the R.C. 4303.292(A)(2)(c) ground, Lack first argues that the evidence does not establish that the permit premises *substantially* interfered with the public decency, sobriety, peace, or good order of the neighborhood. According to Lack, the Cincinnati police received "only" about one call for service per month from 2006 to 2008. Lack also minimizes the testimony of a neighboring resident and the employees of a nearby business regarding the disruption that Lack's patrons have caused the neighborhood. Because the record lacks evidence of shootings, stabbings, or large fights occurring at or near the bar, Lack contends that the amount of disturbance does not rise to the level of substantial interference with the peace, decency, sobriety, or good order of the neighborhood. We disagree.

{¶ 21} During the hearing before the commission, multiple witnesses testified to the bar's deleterious effect on the neighborhood. First, Sergeant Eric Franz testified. Sergeant Franz is a member of the Cincinnati Police Department, and he was the neighborhood liaison sergeant for District 3, the district in which the bar is located, during 2007 and the first half of 2008. Sergeant Franz prepared a compilation of (1) calls for service when police were dispatched to the bar's location, (2) reported crimes that occurred in or just outside the bar, and (3) arrests for crimes committed in or just outside the bar. In 2007, the police received ten calls for service when police responded to reports of possible wanted suspects in the bar, theft, robbery, and disorderly conduct. Also in 2007, victims reported ten crimes that occurred in or just outside the bar, including assault, robbery, and larceny. Finally, in 2007, the police made 18 arrests for crimes, including assault, drug trafficking, drug possession, and underage possession of alcohol, that occurred at the bar.

{¶ 22} Next, Sergeant Salvatore Tufano, the current neighborhood liaison sergeant for District 3, testified. According to Sergeant Tufano, from February 2008 to February 2009, 33 incidents necessitating police involvement occurred at or just outside the bar. These incidents included fights, one of which involved approximately 20 people brawling inside the bar; noise complaints; breaking and entering; and disorderly conduct.

{¶ 23} Officer Sandy Hanes, who works undercover for the Cincinnati Police Department's vice unit, testified that she and her partners investigated the bar in October and November 2007 after receiving a complaint of drug activity and underage sales of liquor. As a result of the investigation, the police arrested multiple individuals for illegal conduct that they observed in the bar. Jeremy Skeene, a bar employee, was indicted for trafficking in cocaine, a fourth-degree felony. Skeene pleaded guilty to trafficking in cocaine as a fifth-degree felony, but he died of a drug overdose before his sentencing. Richard Bussberg and

Derek Moore, both patrons of the bar, were indicted for possession of cocaine.[3] Bussberg pleaded guilty. Diondre Brown, another bar patron, was indicted for having a weapon, i.e., a firearm, while under disability. Brown pleaded guilty to a lesser charge. Lack stipulated that the Department of Public Safety issued it a citation based on the results of the police investigation and that the commission found that Lack committed the conduct underlying the citation and levied a fine of $1,500.

{¶ 24} Two employees of Bernens Medical and Pharmacy ("Bernens"), a neighboring business, also testified. The bar, Bernens, and a natural food store share a common parking lot located behind the three businesses. The natural food store is the bar's immediate neighbor, and Bernens is located on the other side of the natural food store. Holly Engelhart, Bernens' manager, testified that beginning in late 2008, the bar's patrons began exhibiting increasingly poor behavior. Bernens' employees kept a log entitled "Corner Pub Issues," which documented incidences of broken glass in the shared parking lot, public drinking and intoxication, and fighting. Engelhart stated that these daytime incidents adversely affected her customers. Matt Mueller, who manages Bernens' delivery service, testified that he had called the police to report bar patrons fighting in the parking lot. Mueller also stated that broken glass from beer bottles has repeatedly flattened the tires of Bernens' delivery vehicles.

{¶ 25} Tammy Layne lives in the residential area behind the bar. Layne's residence is only four houses away from the bar. Layne recounted an incident in January 2008 when a bar patron, running from police, cut through her backyard. Additionally, Layne testified that bar patrons park on her street, and their noise and the litter they leave cause problems for the neighborhood. Noise from the bar itself—loud music, clashing glass, and arguing—also disturbs the neighborhood.

{¶ 26} Two former bar employees also testified. Eugene Klotter began visiting the bar at the suggestion of a friend. In 2007 or 2008, he briefly worked at the bar as a bouncer and then later as a bartender. After Don Lack, the president of Lack and operator of the bar, fired Klotter for chronic tardiness, Klotter regularly visited the bar as a patron again. Klotter testified that he saw drugs being sold and used at the bar. Klotter told Don Lack about the drug sales and use, but Don Lack "brushed it off." According to Klotter, the bar "was a very violent place to be in," with fights breaking out regularly. In September 2007, Billy Johnson, another regular bar patron, attacked Klotter as he left the bar. Klotter filed a complaint for assault, and Johnson pleaded guilty to a lesser

---

3. The state contends that Bussberg was also a bar employee, but the evidence adduced before the commission does not prove this assertion.

offense. Finally, Klotter testified that the bartenders never checked patrons' identification, and he saw bartenders serve minors alcohol.

{¶ 27} Jacob Griffith worked as a part-time bouncer for the bar from November 2007 to April 2008. Griffith received beer in return for his services as the bar's bouncer. Griffith testified that the bartenders would check a patron's identification only "once in a great while," and he suspected that people under 21 purchased alcohol at the bar. Griffith also stated that "[p]retty much almost every weekend there was at least one fight" at the bar.

{¶ 28} Given the above evidence, we find that the trial court did not abuse its discretion in concluding that reliable, probative, and substantial evidence supported the commission's finding that the permit premises substantially interfered with the public decency, sobriety, peace, or good order of the neighborhood. The commission had before it evidence that tied the bar to criminal and other undesirable activity in the neighborhood. While the facts of this case are not as egregious as some other cases, the evidence adduced established that the bar's adverse effect on the neighborhood's public decency, sobriety, peace, and good order was substantial. See, e.g., *Marciano*, 2003-Ohio-2023, 2003 WL 1908247, at ¶ 30–31 (affirming a denial of renewal when neighbors testified to excessive noise, litter, illegal parking, and fights, and a police officer testified to nine calls for police services during a year, including three liquor violations and two fights).

{¶ 29} Lack next argues that it is not responsible for the actions of the bar patrons or the consequent adverse impact of those actions on the neighborhood. According to Lack, a rejection of a renewal application based on R.C. 4303.292(A)(2)(c) cannot stand if the state fails to prove a direct connection between the permit holder's actions and the harm the permit holder's patrons inflicted on the neighborhood's public decency, sobriety, peace, or good order. Because the record lacks such evidence, Lack urges us to reverse the denial of his renewal application.

{¶ 30} This court has rejected Lack's interpretation of R.C. 4303.292(A)(2)(c). *Asylum, Inc. v. Liquor Control Comm.*, 167 Ohio App.3d 498, 2006-Ohio-2679, 855 N.E.2d 902, ¶ 19–20; *Kamm's Korner Tavern, Inc. v. Liquor Control Comm.* (May 24, 2001), 10th Dist. No. 00AP–1423, 2001 WL 548726. The plain language of R.C. 4303.292(A)(2) requires an evaluation of "the place for which the permit is sought," not the person who operates the business. Thus, rejection of a renewal application is appropriate under R.C. 4303.292(A)(2)(c) even if the permit holder's actions (or inaction) did not cause the deterioration of the neighborhood's public decency, sobriety, peace, or good order. *Asylum* at ¶ 19 (R.C. 4303.292(A)(2)(c) "does not require that any control or fault be shown on the part of the permit holder"); *2971, Inc. v. Liquor Control Comm.*, 10th Dist. No. 04AP–1188, 2005–Ohio–3372, ¶ 9 ("[T]he commission need not demonstrate

that the permit holder's actions were directly related to the conduct of its patrons"); *Kamm's Korner Tavern, Inc.* ("[T]he fact that the permit holder is not directly responsible for environmental problems complained of is not the issue"). In applying R.C. 4303.292(A)(2)(c), the focus must be "on the location of the permit premises, and its effect on the surrounding neighborhood, not on whether the permit holder conducts satisfactory or unsatisfactory business operations." *Aysar, Inc. v. Ohio State Liquor Control Comm.*, 10th Dist. No. 06AP–958, 2007-Ohio-1470, 2007 WL 927231, ¶ 22. See also *Slammers Grill & Bar, L.L.C. v. Liquor Control Comm.*, 10th Dist. No. 06AP–239, 2006-Ohio-6653, 2006 WL 3703860, ¶ 11 ("When interpreting R.C. 4303.292(A)(2)(c), courts focus on the location of the liquor premises rather than the employees who operate the business"); *Marciano*, 2003-Ohio-2023, 2003 WL 1908247 at ¶ 29 ("[T]he causation required for non-renewal based on R.C. 4303.292(A)(2)(c) need only establish some connection between the permit premises and adverse effects upon the surrounding area").

{¶ 31} Following the precedent of this court, we find Lack's culpability, or lack thereof, irrelevant. Moreover, even if we did consider Lack's culpability, we could not accept its contention that "it has done everything it can in this case to response to the complaints." Klotter testified that he told Don Lack that bar patrons were breaking the law, but Don Lack did nothing. Given this inaction, Lack must shoulder some of the responsibility for the bar patrons' ongoing illegality.

{¶ 32} After considering both of Lack's arguments regarding the R.C. 4303.292(A)(2)(c) ground, we conclude that reliable, probative, and substantial evidence establishes that the permit premises substantially interfered with the public decency, sobriety, peace, or good order of the neighborhood. We thus find that the trial court did not abuse its discretion in its ruling on the R.C. 4303.292(A)(2)(c) basis for nonrenewal.

{¶ 33} Next, Lack argues that the record lacks evidence that Don Lack operated the bar "in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of" Ohio. R.C. 4303.292(A)(1)(b). We find this argument unavailing. First, the evidence indicates that Lack sold underage patrons alcohol, a violation of R.C. 4301.22(A)(1). During 2007, the police arrested two individuals for underage possession of alcohol in the bar. Both Klotter and Griffith testified to the bartenders' failure to assure that each patron was of legal drinking age before serving that patron alcohol. Klotter saw underage patrons buying alcohol in the bar. Second, the evidence demonstrates that Don Lack displayed utter indifference to drug trafficking and use in the bar. Despite Klotter's warning that bar patrons were selling and using drugs, Don Lack took no action to stop that illegal activity. Lack also stipulated that the

commission found that it had violated Ohio Adm.Code 4301:1–1–52(B)(5) based on the results of the police investigation into drug sales and use at the bar.[4] Given this evidence, we find that the trial court did not abuse its discretion in concluding that reliable, probative, and substantial evidence supported the commission's decision to affirm the denial of Lack's renewal application based on R.C. 4303.292(A)(1)(b).

{¶ 34} In sum, we find that reliable, probative, and substantial evidence establishes both grounds that the division cited for its refusal to renew Lack's liquor permit. Accordingly, we overrule Lack's second assignment of error.

{¶ 35} For the foregoing reasons, we overrule Lack's first and second assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN and CONNOR, JJ., concur.

---

4. Ohio Adm.Code 4301:1–1–52(B)(5) prohibits permit holders and their agents or employees from "knowingly or willingly allow[ing] in and upon [the] licensed permit premises any persons to * * * [a]llow in, upon or about the licensed permit premises, or engage in or facilitate in, the possession, use, manufacture, transfer, or sale of any dangerous drug, controlled substance, narcotic, harmful intoxicant, counterfeit controlled substance, drug, drug paraphernalia, or drug abuse instrument as said terms are defined in Chapter 2925 of the Revised Code."