[Cite as *Sharonville v. Ohio Liquor Control Comm.*, 2025-Ohio-3289.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Sharonville, | : | |
| Appellant/Appellee, | : | |
| | | No. 24AP-255 |
| v. | : | (C.P.C. No. 22CV-4143) |
| Ohio Liquor Control Commission et al. | : | (REGULAR CALENDAR) |
| Appellees/Appellees | : | |
| [Elizabeth Iloegbunam, | : | |
| Appellant]. | : | |

D E C I S I O N

Rendered on September 11, 2025

**On brief:** *Hastie Legal, LLC, Edward W. Hastie, III*, and *Rebekah Weiss*, for appellee City of Sharonville. **Argued:** *Edward W. Hastie, III*.

**On brief:** *Mark S. Gutentag*; *Santen & Hughes, J. Robert Linneman*, and *H. Louis Sirkin*, for appellant Elizabeth Iloegbunam. **Argued:** *J. Robert Linneman*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Appellant, Elizabeth Iloegbunam, appeals the March 13, 2024 judgment of the Franklin County Court of Common Pleas reversing the Ohio Liquor Control Commission's ("OLCC") June 2, 2022 order that had itself reversed the Division of Liquor Control's ("Division") decision to deny renewal of her permit to distribute liquor for the bar "Cove 51," located in the City of Sharonville ("Sharonville"). Accordingly, the trial court's decision had the effect of denying renewal of Iloegbunam's liquor distribution permit.

While neither the OLCC nor the Division have directly participated in this appeal, Sharonville's brief strongly supports the trial court's decision.

{¶ 2} On May 25, 2021, Sharonville's City Council adopted an emergency resolution stating its position that "the liquor permit issued to Elizabeth Iloegbunam for Klass Entertainment, dba Cove 51, should not be renewed," and requested a hearing "before the Ohio Department of Liquor Control [sic] to prove the authenticity of these findings and to document the fact that the liquor permit should be cancelled." *Sharonville City E.R. 2021-5-03-E, Section III*. Following an extensive hearing, the Division denied Iloegbunam's application to renew her sales license for the premises of Cove 51:

> 1) The place for which the permit is sought is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace or good order would result from the renewal of the permit and operation thereunder by the applicant and manager for the applicant. R.C. §4303.292(A)(2)(c).
>
> 2) The permit holder and manager for the permit holder have operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state. R.C. §4303.292(A)(1)(b).

(Nov. 5, 2021 Order at 1.)

{¶ 3} The denial was supported by extensive evidence, both regarding the nature of the neighborhood where Cove 51 is located and of the incidents with public safety and law enforcement that prompted Sharonville's objection to renewal of Iloegbunam's permit. Representatives of three nearby hotels described regular disruptions by Cove 51's patrons on their properties, which included excessive late-night noise, unauthorized use of private parking lots, fights, discarded and broken alcohol containers, abandoned litter, and used condoms. One of the managers testified that a Cove 51 patron had run through their hotel lobby brandishing a gun, and the director of guest services for another hotel testified that the hotel had lost the business of traveling sports teams because of "shots fired" incidents at Cove 51 and the required police response to those incidents. *Id*. Sharonville's City Director testified that the area surrounding those hotels had been a subject of revitalization and investment efforts over the past few years, and also that Sharonville had planned to borrow nearly $20 million over the next quarter to expand the Sharonville Convention

Center, which is in that same area on the same side of the street and just south of Cove 51. *Id.*

{¶ 4} The Sharonville Fire Department's Acting Chief testified that the operation of Cove 51 had substantially affected the delivery of emergency services to the business. The parking lot was frequently overcrowded and difficult to navigate, and patrons have confronted EMS teams with weapons while they were treating patients. As a result, EMS personnel have been required to wear ballistic vests when responding to the area, and have been instructed to transport patients away from the area for any treatment. *Id.* Further, the operations commander of the Sharonville Police Department testified about numerous incidents requiring police intervention traceable to Cove 51, including 118 documented calls and 43 calls over the course of a single year, including assaults, shots fired incidents, thefts, trouble runs, criminal damaging, and disruption of other area businesses. *Id.* at 2.

{¶ 5} The hearing officer's entry specifically described nine criminal incidents at Cove 51 during the period between December 2018 and December 2020, which included large fights, concealed firearms, vehicular assaults, and gunshots being fired both in the bar and outside it on multiple occasions. *Id.* Finally, the hearing officer noted that citations had been issued against Cove 51's liquor permit two times in 2019 and once in 2020, including documented drug use on the premises, allowing after hours consumption, and disorderly activities, but all three citations were resolved by fine payments rather than actual suspensions. As a result of all this evidence, the hearing officer concluded that "renewal of this permit would continue to burden police resources and substantially interfere with the public decency, sobriety, peace, or good order with other businesses located in this neighborhood" and denied the application for renewal. *Id.* at 1-5.

{¶ 6} Iloegbunam timely appealed the Division's denial to the OLCC, which held a de novo evidentiary hearing on May 10, 2022. Over the objections of both Sharonville and the Division, the OLCC issued a one-page order finding Iloegbunam's appeal "well taken" and reversing the Division's order denying renewal. (June 2, 2022 Nunc Pro Tunc Order.) OLCC's order did not include any specific findings of fact, and did not indicate whether it was overruling the Division's findings on both of the two grounds or just one of them, stating simply that "[u]pon consideration of the evidence and the arguments of the parties, the Commission finds the appeal well taken and reverses the Division of Liquor Control's

order.  Therefore, the Commission orders the Division to continue to process appellant's 2021-2022 Renewal Application." *Id.*

{¶ 7}  Sharonville then appealed the OLCC's decision to the Franklin County Court of Common Pleas, and following the submission of briefs and evidence by Sharonville, Iloegbunam, and the OLCC, that court issued a 25 page decision with a lengthy summary of the evidence presented at the OLCC hearing, and concluded that the OLCC's order was, in part, "not supported by reliable, probative, and substantial evidence or in accordance with law."  The common pleas court accepted the OLCC's conclusion that the Division's R.C. 4303.292(A)(1)(b) finding that the permit holder had operated Cove 51 without regard for the law was erroneous, but concluded that OLCC's reversal of the Division's R.C. 4303.292(A)(2)(c) conclusion that renewal of the permit would cause substantial interference with public decency, sobriety, peace, or good order in the neighborhood was against the clear weight of the evidence in the record.  (Mar. 13, 2024 Decision & Jgmt. Entry at 24.)

{¶ 8}  To reach both of its conclusions, the common pleas court was required to extensively review and summarize the facts presented to the OLCC, because the OLCC did not issue an opinion but rather simply announced its decision reversing the Division. *Compare* June 2, 2022 *with* Mar. 13, 2024 Decision & Jgmt. at 24.)  The court's review of the evidence, analysis thereof, and application of the law thereto is largely summarized in its entry:

> The Commission's reversal of the Division's Order finding that Cove operated its business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state under R.C. 4303.292(A)(1)(b) **is** supported by reliable, probative and substantial evidence and is in accordance with law. The finding that three violations is not a sufficient basis for non-renewal under R.C. 4303.292(A)(1)(b) is valid. The three citations by liquor control agents were for separate violations which reasonably support a conclusion that Cove's violations were not an intentional, pervasive pattern of Cove's disregard for laws, regulations, or ordinances.
>
> . . . .
>
> The Commission's reversal of the Division's Order finding that Cove is so located with respect to the neighborhood that substantial interference with public decency, sobriety peace, or

good order would result from the renewal of Cove's permit **is not** supported by reliable, probative and substantial evidence. From January 1, 2018, to May 11, 2021, there were one hundred and eighteen (118) documented calls for police services to Cove. In 2020, there were forty-three (43) documented calls for police services, fifteen (15) of which disrupted surrounding businesses. The Court notes that this number of calls is based upon Cove only being open three nights per week.

. . .

The number of shootings at Cove has a detrimental effect on law enforcement. As explained by Lieutenant Griffith:

> Generally, when there's a shots fired call, especially if it comes out of the county radio, multiple officers and SWAT agencies will respond as well, due to the nature of the danger to the folks around. And the agencies around us, Glendale, Springdale, agencies like that understand the large crowds that we have on Chester Road at Cove 51. And they know when there's an incident there, generally the Sharonville officers are well outnumbered by the crowd that is there. So they respond to the city as well to help us out with crowd control and try to keep everybody safe. [Transcript, p. 47, 8-91.]

Chief Mackey's testimony as stated above also shows that Cove's patrons' conduct has also had a significant impact on the City's fire department not only for runs to Cove, but to all calls on Chester Road.

The credible testimony of the hotel representatives provided ample evidence of the negative effect Cove's patrons have had on their businesses due to trash, noise, litter, parking and police activities. However, more compelling is the danger it poses to these businesses' employees and customers. This Court is not swayed by the fact that Cove is in a commercial rather than a residential neighborhood. Numerous hotels surround Cove which provide lodging for people, including families and youth in the area for sporting events. Bullets can travel a great distance. The rash shootings that have occurred outside Cove by its patrons create a significant threat to the well-being of a large number of people staying and working at these hotels.

In sum, even giving due deference to the Commission, the persuasive and consistent testimony of Lieutenant Griffith,

Chief Mackey, and the hotel representatives show that Cove constitutes a breeding ground for a deleterious environment. Cove's operation imposes a burden on surrounding businesses and city resources. The number of violent incidents, many involving deadly weapons such as firearms, poses a significant threat to the safety of the employees and patrons of the surrounding businesses.

Since the Commission's Order failed to state any facts or reasons for their decision, this Court cannot definitively articulate the underlying basis for its decision. However, based on some of the Commissioners' comments in the transcript, it is possible that they were persuaded by the fact that the City's Safety Service Director granted Cove a Nightclub Establishment Permit less than two months before City Counsel passed the resolution objecting to the 2021-2022 liquor permit renewal. Nevertheless, the bases for the issuance of a liquor permit and the Nightclub Establishment Permit are separate and distinct. Nightclubs do not inherently serve liquor and the issuance of a Nightclub Establishment Permit does not exempt Cove from meeting the requirements of Title 43 of the Revised Code.

(Decision & Jgmt. Entry at 19-20, 23-24.)

{¶ 9} Iloegbunam has now timely appealed the common pleas court's decision and takes issue with its factfinding and decision. She asserts a single assignment of error with the trial court's judgment:

The Court of Common Pleas, sitting as a court of appeals under R.C. § 119.12, abused its discretion by relying upon its own evaluation of the credibility of witnesses, and resolving acknowledged conflicts in the evidence against Appellant Iloegbunam, thereby substituting its judgment for that of the Ohio Liquor Commission.

{¶ 10} Pursuant to R.C. 4303.271(A), a permit holder is entitled to renewal of its liquor permit unless good cause exists to reject the renewal application. The division has the burden of proving, by a preponderance of the evidence, good cause for the rejection of the renewal permit. Pursuant to regulation, the division must begin with a presumption that the renewal of the permit will not prejudice the maintenance of public decency, sobriety and good order, Adm.Code 4301:1-1-12(B), and the division must prove its case with reliable, probative and substantial evidence. *See, e.g., Aysar, Inc. v. Ohio State Liquor Control Comm.*, 2007-Ohio-1470, ¶ 18-19 (10th Dist.).

{¶ 11} A common pleas court may affirm the order of an agency on appeal if it finds that the order was supported by reliable, probative, and substantial evidence and in accordance with law. R.C. 119.12(N). "In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.* "In performing this review, the court of common pleas may consider the credibility of the witnesses as well as the weight and probative character of the evidence. To a limited extent, the standard of review permits the court of common pleas to substitute its judgment for that of the administrative agency." *Bagley Interstate 71 Ent. v. Ohio Liquor Control Comm.*, 2004-Ohio-1063, ¶ 7 (10th Dist.), citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

> In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.
>
> Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.

*Conrad* at 111, quoted in *Bill Jackson Roofing, Inc. v. Dir., Ohio Dept. of Job & Family Servs.*, 2021-Ohio-284, ¶ 20 (10th Dist.).

{¶ 12} On appeal to this court, the standard of review is more limited. We do not determine the weight of the evidence but simply analyze whether the court of common pleas abused its discretion in determining issues, such as the weight of the evidence and credibility of the witnesses, as to which the court of common pleas has limited discretion to

exercise. On questions of law, the court of common pleas does not exercise discretion and our review is plenary. *Bagley Interstate 71 Ent.* at ¶ 7-8. *See also Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 2003-Ohio-418, ¶ 15 (10th Dist.) (citing cases).

{¶ 13} In her merit brief, Iloegbunam argues that the trial court "improperly substituted its judgment for that of the Commission. . . . first, [the court] noted that there were conflicts in the evidence in the record; then, made observations about the credibility of witnesses; and, then resolved the conflicts based on its own judgments." (Appellant's Brief at 8-9.) She specifically argues that her own testimony—as well as the testimony her husband Victor (Cove 51's co-owner and general manager), and of Mel Green (Cove 51's manager)—contradicts the testimony of the hotel representatives regarding the duration of the parking and litter problems attributable to Cove 51. (Appellant's Brief at 27-28.)

{¶ 14} But the trial court's analysis and decision is based on record evidence to which Iloegbunam, on the whole, presents no counter-position. *See generally* Decision & Jgmt. Entry at 3-17.) She barely mentions, and apparently does not take issue with, the evidence presented by the Sharonville Police Department and Sharonville Fire Department representatives. She does not contest the number or nature of calls made to Cove 51 by the emergency services and does not point to any evidence outside the self-serving testimony of Cove 51 and its representatives that Cove 51 has truly remedied the neighborhood problems attributable to its operation.

{¶ 15} Moreover, Iloegbunam has misunderstood the common pleas court's role and function in this case. The court was not required to defer completely to the "credibility determinations" ostensibly made by the OLCC in its single-page order, as Iloegbunam argues. Rather, pursuant to *Conrad* the common pleas court properly employed a *hybrid review* that *required* it to engage limited factfinding and credibility analysis—an approach made all the more important by the OLCC's failure to offer any explanation for its decision rejecting the Division's analysis. The court's review of the facts is very thorough and completely reasonable, and its partial reversal of the OLCC's decision is appropriate on these facts. And given our own limited standard of review, we cannot conclude that review of the facts and partial reversal constitutes an abuse of the common pleas court's discretion

in this case. For these reasons, Iloegbunam's single assignment of error is overruled, and the trial court's judgment partially reversing the order of the OLCC is affirmed.

*Judgment affirmed.*

JAMISON, P.J., concurs.
EDELSTEIN, J, concurs in part and dissents in part.

_____

EDELSTEIN, J., concurring in part and dissenting in part.

{¶ 16} While I agree with both the trial court and the majority decision that there is a significant amount of evidence in the record that would support a conclusion that a substantial interference with public decency, sobriety, peace, or good order would result from granting renewal of Ms. Iloegbunam's liquor permit for Cove 51, that is not the question the trial court or this court was tasked with answering. Rather, because the Commission granted the permit renewal in this case, albeit without a detailed decision providing factual findings and analysis, the trial court was required to consider whether ***that decision*** was supported by reliable, probative, and substantial evidence in the record. The trial court does not seem to have considered the evidence supporting the OLLC's decision, focusing instead on the substantial evidence against it. Because I believe the trial court applied an incorrect standard of review to its consideration of the OLLC's decision ***granting*** renewal of Cove 51's liquor permit, and the majority decision concludes otherwise, I respectfully dissent.

{¶ 17} In its decision, the trial court cited the correct standard of review for administrative appeals filed pursuant to R.C. 119.12—whether the agency's decision is supported by reliable, probative, and substantial evidence and is in accordance with law. (Mar. 13, 2024 Decision & Jgmt. Entry at 17-18, citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980), and quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).) But, in concluding the OLLC's decision with respect to R.C. 4304.292(A)(2)(c) was not supported by reliable, probative, and substantial evidence, the trial court seems to have flipped the standard on its head. Rather than determining whether evidence supported ***granting*** the permit renewal, the court describes at length the large number of calls for police service at Cove 51, the gravity of some of the incidents that have occurred in and around Cove 51, the testimony provided by nearby hotel representatives

about the impact Cove 51 has had on their businesses, and the detrimental effects Cove 51 has had on law enforcement and emergency responders. But, whether there is a significant amount of evidence from police, fire, and business representatives supporting a conclusion that Cove 51 "constitutes a breeding ground for a deleterious environment" and "imposes a burden on surrounding business and city resources" is not the question the trial court was tasked with answering. (Mar. 13, 2024 Decision & Jgmt. Entry at 23.)

{¶ 18} Our precedent is not especially helpful for addressing a case in this procedural posture. Most published appeals from OLCC decisions come to this court after the OLCC *denies* an application and the trial court reviews *the denial* to determine whether it is supported by reliable, probative, and substantial evidence. And many of these decisions rightly provide a lengthy recitation of the evidence supporting denial. *See, e.g., M & M Grill v. Ohio Liquor Control Comm.*, 2005-Ohio-2431 (10th Dist.) (concluding that, although only one witness testified for the appellee city and nine witnesses testified for the appellant permit holder, trial court did not abuse its discretion in finding reliable, probative, and substantial evidence existed to support the Commission's decision denying permit renewal); *Douglas v. Ohio Liquor Control Comm.*, 2012-Ohio-2218, ¶ 37 (10th Dist.) (concluding "substantial evidence was presented regarding the adverse impact of the permit premises, . . . as well as the additional strain on police resources," and therefore "[t]he record before the commission clearly support[ed] a finding that the location of the permit premises substantially interfere[d] with public decency, sobriety, peace or good order"); *Nasser v. Ohio Liquor Control Comm.*, 2005-Ohio-4638, ¶ 11, 13 (10th Dist.) (concluding "substantial [evidence] was presented regarding the adverse impact of appellant's store on the neighborhood" and, therefore, "the record reflects reliable, probative, and substantial evidence supporting the division's application of R.C. 4303.292(A)(2)(c) to deny appellant's application"); *Aysar, Inc. v. Ohio State Liquor Control Comm.*, 2007-Ohio-1470, ¶ 29 (10th Dist.) (concluding "copious evidence" supported the Commission's decision and therefore the trial court did not abuse its discretion in affirming the Commission's denial of the permit renewal application).

{¶ 19} But when the OLCC's decision is, instead, to *grant* renewal of a permit, recitation of facts supporting a contrary decision does not answer the correct question. And that is what I believe the trial court did below.

{¶ 20} Because I believe the trial court applied an erroneous standard of review to its consideration of the OLCC's decision under R.C. 4303.292(A)(2)(c), I would conclude that the court abused its discretion, vacate the decision in part, and remand for the trial court to determine whether reliable, probative, and substantial evidence supported the Commission's decision to ***grant*** the renewal, not whether significant evidence weighed more strongly in favor of denying it.